BUMP ET AL., APPELLANTS, *v.* GEDDES, RESPONDENT.

(No. 5,460.)

(Submitted April 23, 1924.  Decided May 15, 1924.)

[226 Pac. 512.]

*Land Contract—Defective Title—Insanity of Vendor's Grantor —Fraud—Damages—Complaint—Sufficiency.*

Land Contract—Fraud—Damages—Complaint—Sufficiency.
   1.   Complaint alleging that defendant had induced plaintiffs to pur-
   chase land representing that he would convey a good title when he
   knew it was impossible for him to do so because his title had been
   acquired from one who had been judicially declared to be insane and
   who died without having been restored to capacity, and seeking dam-
   ages for the fraud committed, stated a cause of action, and sus-
   taining a demurrer thereto was error.
Fraud—May Consist of What.
   2.   Deceit or fraud may be negative as well as affirmative; it may
   consist of suppression of that which it is one's duty to declare, as
   well as in the declaration of that which is false.

*Appeal from District Court, Flathead County; C. W. Pom-
eroy, Judge.*

ACTION by Leonard Bump and Alice Bump against E. L.
Geddes.  From a judgment for defendant, plaintiffs appeal.
Reversed, with directions.

*Mr. John F. Duffy,* for Appellant, submitted a brief.

*Messrs. Foot & Foot,* for Respondent, submitted a brief;
*Mr. E. B. Foot* argued the cause orally.

Appellants state that this is an action at law for damages
for fraudulent deceit.  This we do not believe in the case.
It is one rather for rescission, an equitable action, and is to
be governed by the law applying to an action for rescission.
The law is settled in this state that in an action by the vendee
for the rescission of a contract for the purchase of land, the
vendee has an election of remedies.  (*Smith* v. *Christe,* 60
Mont. 204, 201 Pac. 1011.)

Appellants here have elected to rescind. Having done so, they must offer to restore whatever value they have received by surrendering possession of the premises. The complaint proper nowhere contains any allegation that plaintiffs restored or even offered to restore the premises to the defendant. They also fail to show diligence in rescinding after learning of their right to do so.

Even though appellants' theory be adopted and this action treated as one at law for damages rather than for rescission, the complaint fails to state a cause of action. It still is necessary that defendant made false statements and representations and that plaintiffs believed them. This does not appear; nor is it necessary under appellants' theory of the case that defendant have title before the time arrives for conveyance by him to the plaintiffs. (*Hogsed* v. *Gillett*, 60 Mont. 467, 199 Pac. 907; *Bozdech* v. *Montana Ranches Co.*, 67 Mont. 366, 216 Pac. 319.)

In order to maintain an action for a breach of warranty it is necessary to show an eviction, actual or constructive. Plaintiffs nowhere allege that they were ever evicted or that their possession was ever disturbed in any manner by any of the persons alleged to have a title paramount to that of the defendant. (*Green* v. *Baker*, 66 Mont. 568, 214 Pac. 88.)

MR. JUSTICE COOPER delivered the opinion of the court.

From the allegations of the complaint it appears that the [1] defendant wrote a letter to the plaintiff Leonard Bump on June 25, 1917, describing a tract of land consisting of 160 acres and telling him he had it for sale. This land he had acquired by deed from one Matthew Cuffe in the years 1910 and 1911. On January 11, 1902, Cuffe was judicially declared to be insane and incapable of conveying land. He was never restored to capacity, and died by his own hand on February 9, 1917. In the letter addressed by defendant to plaintiff the

defendant did not mention the source from which he obtained title. On July 9, 1917, it was agreed that the defendant should "execute and place in escrow" a deed executed by himself and wife, "which would convey a good title to the land." Within a few days after July 9, 1917, defendant and his wife executed to plaintiffs a deed purporting to convey the farm lands mentioned in the letter to plaintiffs, and placed the deed in escrow in the First National Bank of 'Whitefish, to be delivered upon a compliance by plaintiffs with the terms of sale. In the fifth paragraph there is this allegation: "That at the time said deed was delivered to said bank in escrow neither one of the plaintiffs signed any writing, nor either of them saw defendant sign any writing, nor had they any information as to the delivery thereof to that effect, upon which plaintiffs relied entirely."

The sixth paragraph describes the land as "cut-over stump land without habitable improvements or fences," and alleges that on August 22, 1917, plaintiffs moved on to the premises; that on December 4, 1917, they completed the construction of a dwelling-house thereon, in which they still reside, and that they have constructed thereon other frame buildings of the value of $1,200, and have cleared off stumps and cultivated twenty acres of the land.

The seventh paragraph alleges that on or about July 9, 1918, for a consideration of $1,250, plaintiffs conveyed to defendant their house and three lots in the town of Libby aforementioned, and on August 18, 1919, paid in cash on the purchase price $150; that plaintiffs have fully performed their part of the agreement and are not in default.

Paragraph 8 alleges that plaintiffs relied solely upon defendant's "representations and warranty," and were unaware of any defect in the title until January, 1922, when they obtained legal advice as to the title, and were informed that defendant's title rested solely upon the two deeds executed in 1910 and 1911, respectively, by Matthew Cuffe.

Paragraph 9 avers that defendant well knew that by reason of Cuffe's insanity and incapability he did not procure and could not convey to plaintiffs a good title to the land in controversy; that he entered into the contract, "and fraudulently induced plaintiffs to enter into the same with the intention of cheating and defrauding them out of their house and lots in Libby" and the improvements the plaintiff had placed upon the lands; that they did not know of Cuffe's insanity until long after the contract for the purchase of the lands was made, and that, had they known of the title under which defendant held, they would neither have contracted to purchase them, nor would they have conveyed to defendant the lots in Libby, nor would they have made the payments nor improved the premises as they did.

In the tenth paragraph it is set forth that plaintiffs were offered $4,000 for the land, and, not knowing of the defect in the title, were willing to sell at that price, but that defendant discouraged the plaintiffs from accepting the offer, stating that the land was worth much more than that, well knowing that, if the sale were made, he "would be called upon to present a good title" to the prospective purchaser, and his fraud on the plaintiffs would then be exposed.

Paragraph 11 alleges that in November, 1921, defendants fraudulently misrepresented to plaintiffs that they were in default in their payments "by confusing the condition of their account on said land with other transactions between plaintiffs and defendant, and thereby induced plaintiffs to consent to a release of the escrow deed, but which consent and release were without consideration and therefore void," because plaintiffs were not in default, and "only gave their consent to said release under the mistaken belief fraudulently induced as aforesaid."

In paragraph 12 it is alleged that in November, 1921, to more effectually carry out the fraud, defendant conspired with one Henry Good to cheat and defraud plaintiffs by a pretended

sale of the land to him for $3,200; their immediate aim being to cause plaintiffs to release the "escrow deed" in the White-fish bank and to surrender possession of the land to Good; that defendant and Good at all times knew of the defect in the title, because he (Good) was asserting title and ownership to about 145 acres of land obtained by him from Cuffe by pretended deed while Cuffe was so insane; that in furtherance of the conspiracy on or about December 1, 1921, defendant and wife, without consideration, made and delivered a deed of the land in question to Good, and on May 12, 1922, filed the same of record; their sole purpose being to defraud plaintiffs out of the improvements placed upon the land and the money paid defendants thereon.

The thirteenth paragraph alleges that the four children heirs of Cuffe hold title to the land, assert their right thereto and refuse to convey it to defendant.

The fourteenth paragraph alleges that on March 28, 1922, after employing counsel to examine the title to the land, "they caused to be served on defendant at Whitefish a rescission of the contract," and demanded a return of the money paid to defendant in the amounts set forth in the prayer, which reads as follows: "Wherefore plaintiffs demand judgment against the defendant: (1) For the sum of $988.25, and interest at 8 per cent per annum from January 19, 1923; (2) for the sum of $500 attorney's fees; and (3) for costs."

The defendant filed a general demurrer to the complaint, stating as his ground that it did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer; judgment was entered for defendant, and plaintiffs appeal.

Appellants' counsel takes the position that the action is one at law for the recovery of damages for deceit; while the respondent contends that it is one for rescission—"an equitable action, and is to be governed by the law applying to an action for rescission." If the district court took the view suggested

by respondent, its analysis of the complaint and its application of the law thereto were erroneous.

The gist of the action is fraudulently producing a false impression upon the minds of the plaintiffs as to defendant's title. If he accomplished that result, it is not important whether the means of accomplishing it were by acts of concealment or suppression of facts not equally within the knowledge or reach of the plaintiffs. Fraud or deceit, accompanied with damage, furnish a basis for a good cause of action. It will be sufficient proof of fraud to show that a fact as represented is false, and that the person making the representation had knowledge of a fact contrary to it, of which the other contracting party was innocent. (1 Sugden on Vendors, sec. 6.)

It is apparent from the frame of the complaint that the plaintiffs proceeded upon the theory that they have a right to recover damages against the defendant because of his deceit and fraud in assuring them a good title, when in fact it is traced back to his immediate grantee who was insane, incompetent and incapable of conveying a good title. The question submitted for decision is whether or not the facts set forth are sufficient to charge actionable fraud and deceit. This question has arisen in different forms in this jurisdiction. (*Power & Bro.* v. *Turner*, 37 Mont. 521, 97 Pac. 950; *Como Orchard Co.* v. *Markham*, 54 Mont. 438, 171 Pac. 274; *Koch* v. *Rhodes*, 57 Mont. 447, 188 Pac. 933; *Connelly Co.* v. *Schlueter Bros.*, 69 Mont. 65, 220 Pac. 104.)

"Deceit may be negative as well as affirmative; it may con-
[2]   sist in suppression of that which it is one's duty to declare, as well as in the declaration of that which is false." (12 Cal. Jur., sec. 43, p. 770.) A fraudulent concealment is the intentional suppression of some fact which it is material for a party to know to prevent being defrauded. (*Page* v. *Parker*, 43 N. H. 363; *Power & Bro.* v. *Turner, supra.*) By the terms of our statute one is guilty of actionable deceit who willfully deceives another with intent to induce him to alter

his position to his injury or risk, and is liable for any damage
which he thereby suffers. (Rev. Codes 1921, sec. 7574.) The
suppression of a fact by one who is bound to disclose it also
constitutes deceit. (*Id.*, sec. 7575.) As this court said in
*Koch* v. *Rhodes, supra,* at page 457, 188 Pac. 937: "Under our
statutes, and under the authorities, one who has been fraudu-
lently induced to enter into a contract has the choice of either
rescinding the contract (Rev. Codes, sec. 5063 [now sec. 7565])
by restoring or offering to restore what he has received under
the contract, and recover what he has parted with, or he may
affirm the contract, keeping whatever property he may have
received or advantage gained, or sue in an action for deceit
for the damages suffered by reason of the fraud. While the
affirmance of the contract precludes him thereafter from re-
scinding, he may still sue for damages, unless he waives that
right (*Como Orchard Co.* v. *Markham,* 54 Mont. 438, 171 Pac.
274)."

The elements necessary to warrant relief in an action of
this character are more fully stated in the late case of *Con-
nelly Co.* v. *Schlueter Bros.,* thus: "In stating the elements of
actionable fraud predicated upon false representations, the au-
thorities do not always employ the same terms. Local statutes
are responsible for the variations to some extent, but, speaking
generally, it will be found upon analysis * * * that the
elements are: (1) A representation; (2) its falsity; (3) its
materiality; (4) the speaker's knowledge of its falsity or ig-
norance of its truth; (5) his intention that it should be acted
upon by the person and in the manner reasonably contem-
plated; (6) the hearer's ignorance of its falsity; (7) his reli-
ance upon its truth; (8) his right to rely thereon; and (9)
his consequent and proximate injury. All these elements, how-
ever, are said to be comprehended in the more general terms:
Representation, its falsity, scienter, deception, and injury.
(26 C. J., 1063.)" The several grounds upon which an action
of this nature will be sustained are fully discussed in the third

edition of Maupin on Marketable Title to Real Estate, sections 101, 102.

In Warvelle on Vendors, section 73, it is said: "After a person has by inquest been found to be of unsound mind, he should, so long as the unsoundness continues to exist, be re-garded for most, if not all, purposes of business as civilly dead, and a deed thereafter executed by him would be absolutely void."

*Burns* v. *Dockray,* 156 Mass. 135, 30 N. E. 551, was an action of tort for alleged false and fraudulent representations and concealment in the sale of real estate. On November 13, 1884, one Lang, who was then insane, conveyed his land to Perrin, one of the defendants. Perrin conveyed to plaintiff on March 18, 1885. On March 30 thereafter Lang was adjudged insane. In making the sale the defendant Dockray told plaintiff that they would give her a good title and she believed him. Defendant said nothing to either the plaintiff or her husband, who conducted the negotiations for her, of Lang's insanity, and neither of them knew anything about it. The court reasoned out the point as follows: "There was the positive statement that the title was good by parties who apparently were in a position to know the truth or falsity of what they said. The statement was not made as a matter of judgment or opinion, and cannot be regarded as seller's talk. The statement was made absolutely as a fact. Coupled with it was the failure to refer in any way to the alleged insanity of Lang, which, if it existed, seriously clouded the title, making the sale to Perrin voidable at the election of Lang or his guardian."

The false representations as to the title which defendant had to convey so far prevailed as to induce the plaintiffs to part with their money and to expend their time and labor upon the understanding that they were to receive a good title to the premises. This the defendant was never able to give.

The complaint, founded as it is upon the deceit of the defendant, states a good cause of action upon that ground, and

is good against a general demurrer.    Judgment reversed, with direction to overrule the demurrer.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.