KRUEGER ET AL., APPELLANTS, *v.* MORRIS ET AL., RESPOND-ENTS.

(No. 8,029.)

Submitted April 5, 1940.   Decided July 15, 1940.)

[107 Pac. (2d) 142.]

*Mr. G. J. Jeffries* and *Mr. J. J. McIntosh,* for Appellants, submitted an original and a reply brief, and argued the cause orally.

*Mr. F. F. Haynes,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs have appealed from a judgment of dismissal entered after the entry of an order sustaining defendants' general demurrer to plaintiffs' amended complaint. Hence the only question before us on the appeal is, Does the amended complaint state facts sufficient to constitute a cause of action? For the sake of brevity we shall hereafter refer to the amended complaint as the complaint.

The complaint contains two alleged causes of action. It seeks the reformation of a contract for the purchase of land by plain-

tiffs from defendants Morris and Noble, doing business as partners under various names, for specific performance of the contract as thus reformed, and for an accounting. It also asks for a decree vacating, cancelling and setting aside any and all liens against the lands of plaintiffs arising from the several bond issues hereinafter referred to.

The complaint alleges that the lands in question were included in the defendant Hammond Irrigation District; that plaintiffs' contract of purchase was entered into on November 16, 1927; that the irrigation system consisted of a main canal and laterals supplied by a large pumping plant and an upper ditch supplied by a smaller independent pumping unit; that the upper ditch was used exclusively to irrigate a small area including plaintiffs' land; that the small pumping unit supplied the main canal in addition to supplying the upper ditch; that in 1921 the irrigation district had issued bonds in the sum of $70,000; that on July 1, 1927, it issued refunding bonds in the sum of $40,000 to refund the outstanding bonds of the $70,000 bond issue; that on September 1, 1927, it issued additional bonds in the sum of $27,000 for construction purposes and for the repair, maintenance and improvement of its irrigation system, though it is alleged that this bond issue was issued merely to reimburse and repay to the defendants moneys expended by them for their primary benefit, and that the moneys were not expended to improve the land or any part thereof contracted to be sold to plaintiffs; that on August 1, 1928, it issued other bonds in the sum of $17,000, and on June 1, 1929, another $17,000 bond issue; that prior to 1928 a majority of the land owners in the district, representing a majority of the acreage, defaulted in the payment of taxes, and a majority of the acreage in the district was sold for delinquent taxes; that defendants Morris and Noble individually and as a partnership and doing business under various company names, became the purchasers and acquired a majority of the acreage through tax deeds; that the defendants thereby dominated and controlled the district; that the lands were acquired for a nominal sum, the irrigable lands at not more than $10 per acre and the non-irrigable at $1 per acre; that by reason of the

issuance of tax deeds the lands were released from the $70,000 bond issue; that since these defendants acquired the lands they also acquired the remaining outstanding bonds of the $70,000 bond issue amounting to $38,500; that the bonds were also acquired at a nominal cost or at no more than 15 per cent. of full value; that the acquisition of the lands, together with the bonds, effected a merger of the interests in the defendants, and that this accomplished a cancellation and extinguishment of the lien of the bonds; that notwithstanding the merger and cancellation of the bonds, the defendants treated the bonds as valid obligations of the district, and as liens upon the lands, including those purchased by plaintiffs; that thereafter the defendants Morris and Noble, acting fraudulently and in collusion with the purported commissioners of the district selected by the defendants Morris and Noble, caused assessments to be levied upon the lands of plaintiffs and other lands in the district; that in carrying out their fraudulent purpose they caused the defendants McGraw, Beeman and Nertney to act as purported commissioners of the district during the years 1927 and 1928, although no one of these persons was a land owner in the district, but that they fraudulently attempted to qualify them as commissioners by causing deeds to be executed to each of them for a small tract of land in the district, which land was in most cases non-irrigable and of little or no value; that the deeds were not delivered to such persons and were executed without consideration, and that defendants Morris and Noble then required such alleged commissioners to reconvey the tracts of lands to them; that the deeds issued to such alleged commissioners were placed of record, but the reconveyance of the same land to defendants Morris and Noble from the purported commissioners was withheld from record; that the three persons above named acted as commissioners during the years 1927 and 1928, and McDaniels took the place of Nertney during the year 1928 and his qualifications were no better than those of the others; that some of the purported commissioners were required by the defendants Morris and Noble to execute and surrender to them their written resignations as commissioners, which resignations were in the possession

of defendants Morris and Noble at the time the commissioners were purporting to act as such; that defendants Morris and Noble, acting fraudulently and collusively with the commissioners, caused the $40,000 refunding bonds to be issued without consideration and have caused assessments to be levied against the lands in the district, including plaintiffs' lands, with which to pay the refunding bonds; that they expended moneys to enlarge their pumping plant for improving other lands in the district, but without improving the irrigating system serving plaintiffs' lands; that the $27,000 bond issue was also issued without consideration; that the defendants in furtherance of their fraudulent design diverted revenues of the district to pay the principal and interest upon the bonds; that the two $17,000 bond issues were issued for making improvements upon lands in the district other than those belonging to plaintiffs; that all of the bonds were issued without consideration but have been used for the basis of the levy of taxes upon the lands in the district, including lands of plaintiffs; that defendants Morris and Noble caused land owners' petitions to be presented to the commissioners though they were not signed by a majority in number or acreage as required by law as a condition precedent to the issuance of bonds; that the commissioners treated the petitions as valid and presented petitions to the court for the issuance of the bonds, causing them to be set for hearing and causing the petitions to be ''fraudulently presented to the court on the false assumption that said persons were duly authorized commissioners and that the proceedings were based on valid land owners' petitions''; that the court approved the proceedings and decreed the bonds to be liens upon the lands in the district, including plaintiffs' lands, and provided for the assessment thereof; that all the purported proceedings looking to the issuance of the bonds and the approval thereof by the court were without jurisdiction and the bonds were therefore void; that plaintiffs purchased the lands in question upon ''the false representations that plaintiffs' lands would not be subject to said district bond liens,'' and that, had the plaintiffs not been so deceived and misled, they would not have entered into the contract; that the purported commis-

sioners of the district failed to procure the approval of the irrigation district bond commission of the state of Montana on the bond issues; that under plaintiffs' contract of purchase they were obliged to make payments in annual installments; that their contract obligated the defendants to convey the premises to plaintiffs "free and clear of all liens or encumbrances of whatsoever kind or nature"; that the contract obligated plaintiffs to pay "all state, federal, irrigation and all other taxes and assessments which may be levied or assessed against or which may become due upon or against said property subsequent to date thereof and pay said liens, taxes or assessments when due"; that before entering into the contract plaintiffs inspected the land with a representative of defendants and that the land could only be irrigated through the highline ditch and a separate pump unit, together with a small secondary highline ditch, constructed by mutual consent; that plaintiffs' lands could not be and have not been irrigated from what is known as the main channel and the large pumping unit; that it was agreed that the obligation of plaintiffs for their pro rata cost of irrigation was not to exceed $2.50 per acre; that $400 a year was ample to maintain and operate the independent irrigation system of which plaintiffs' share would not exceed $200 per annum; that it was agreed that plaintiffs were to bear no part of the main irrigation district expenses; that defendants agreed to segregate plaintiffs' lands from the district and release the same from any expenses in connection therewith, but that they failed to do so; that defendants agreed that plaintiffs' only obligation would be to pay the state and county taxes upon the lands and plaintiffs' pro rata share of the cost of the independent irrigation system, together with the purchase price of the land, and that defendants would thereupon convey the lands to plaintiffs free of any lien or encumbrance whatsoever; that the contract was presented to plaintiffs by the defendants Morris and Noble with representations by them that it accurately and fully expressed the agreement between the parties, whereas in truth and in fact the contract is incomplete and inaccurate and does not fully set forth the agreement, and in consequence plaintiffs are entitled to have it reformed; that de-

fendants in violation of the agreement caused levies to be made against plaintiffs' and other lands in the district to pay all the bonds, including those issued to reimburse the defendants Morris and Noble for expenditures for installation of the large pumping plant, the improvement of the main channel and the general improvement of the main district system, all of which were without benefit to plaintiffs' lands; that because of defendants retaining complete ownership and control of plaintiffs' lands under this contract, plaintiffs had no voice in the management of the district, and that all proceedings in connection with the bond issues and with reference to the taxation were suppressed and withheld from the plaintiffs by the defendants; that by reason of the defendants' failure to segregate plaintiffs' lands from the district, plaintiffs were, in compliance with the provisions of the contract, compelled to pay state and county taxes on the lands and were unable to pay the same without also paying the irrigation district taxes; that in order to prevent a cancellation of the contract plaintiffs were compelled to, and did, pay money for assessments levied during the term of the contract, such payments covering the years 1928 to 1937, both inclusive, itemized by years, amounting to a total of $7,710.80; that plaintiffs have made all payments required by the contract except the last, which was paid in escrow to the Forsyth State Bank, and defendants notified thereof; that plaintiffs thereupon demanded a deed from the defendants, free and clear of all liens and encumbrances; that defendants have failed and refused to segregate plaintiffs' lands and deliver such deed free and clear of all liens and encumbrances, but instead thereof tendered a deed subject to a lien of all of the bonds aforesaid, which aggregate approximately $20 per acre on plaintiffs' lands, representing a total encumbrance of approximately $9,000.

Practically all of the foregoing allegations appear in both causes of action. The second cause differs from the first in some minor matters and, particularly, in that it sets out some of the facts more in detail. No useful purpose would be subserved in pointing out the difference between the two causes of action at this time.

As before stated, our province is to determine whether the complaint states facts sufficient to entitle the plaintiffs to any relief. In other words, under a general demurrer the rule is that if the complaint states facts sufficient to entitle plaintiff to any relief, it should be overruled. Defendants assert that the complaint is insufficient for several reasons, which we will now consider.

The first question for consideration is whether at this late date the validity of any of the bond issues may be attacked. On this point we are met with the following provisions of section 7211, Revised Codes: "If no such appeal be taken within the time aforesaid, or if taken and the judgment or decree of the district court be affirmed by the supreme court, such judgment or decree of the district court shall be forever conclusive upon all the world as to the validity of such bonds and said special tax or assessment, and the same shall never be called into question in any court in the state."

Most of the bonds, it will be noted, had been issued before plaintiffs purchased the property in question here. The then owners of the land did not question the validity of the bond issues and took no proceedings to assert the exemption of the lands purchased at delinquent tax sale from the lien of the bonds as they might have done under *State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1. Hence, at this late date, the bond issues must all be regarded as valid, and we must also treat the bonds as constituting liens upon the entire property of the district, since it is not alleged that any protest was made against the confirmation of the proceedings by the district court under section 7211.

The only remaining question is whether the defendants Morris and Noble or the plaintiffs must bear the burden of these assessments. That question depends upon the contract of purchase of the lands. The written contract contained this clause: "The purchaser [plaintiffs here] agrees to pay all state, county, federal irrigation and all other taxes and assessments which may be levied, or assessed against or which may become due upon or against said property subsequent to date hereof

and pay said liens, taxes or assessments when due." It then contained a clause to the effect that if the purchaser fully performs then "the sellers agree to convey to the said purchaser by a good and sufficient deed of grant, bargain and sale the whole of the premises hereinabove described, free and clear of all liens or encumbrances of whatever kind or nature, excepting liens for taxes or assessments of whatever kind or nature which the purchaser hereby assumes to pay when due."

Plaintiffs contend that the written contract does not truly express the intention of the parties and seek its reformation. They allege that it was understood that the cost of pumping water to irrigate their lands should not exceed $2.50 per acre or a total of $200 per annum. They do not allege why they signed the contract as written or whether they read it before signing. They simply allege that defendants represented that the contract as written expressed the agreement between the parties and that plaintiffs relied upon the representation.

As above pointed out, the complaint alleges that the plaintiffs paid assessments for ten years, amounting in the aggregate to $7,710.80, some of which appear from the complaint to have been assessments for maintenance and some for bond interest for each year commencing with the year 1928 and ending with the year 1937, both inclusive. The assessment for the year 1928 amounted to $468.90, or more than what they allege it was understood would amount to one year's assessment for pumping costs. The assessment for 1929 amounted to $677.30 or to $3.25 per acre, which exceeded what plaintiffs allege it was understood would be the cost of the pumping charge. Each year thereafter the assessment exceeded what plaintiffs allege was understood to be the maximum charge to them.

The defendants contend that the payment of these assessments over this long period constituted a ratification by acquiescence in the contract as written. It is well settled that acquiescence in a contract after learning that it does not represent the actual agreement, destroys the right of reformation. This is the effect of our statute, section 8745, Revised

Codes, and to the same effect is *Cook-Reynolds Co.* v. *Beyer*, 107 Mont. 1, 79 Pac. (2d) 658. In the *Beyer Case* we quoted with approval the following from 23 Ruling Case Law, 347:

"If a party acquiesces in an instrument after becoming aware of the mistake, he loses his right to reformation. The acquiescence may be direct or implied. If for instance a deed, through mistake, conveys too much land, the vendor cannot have it corrected, if, after the discovery of the mistake, he receives the purchase money and yields possession to the vendee. The acquiescence in the written instrument may be implied from an unreasonable delay in applying for redress after getting notice of the mistake. Of course there can be no acquiescence unless the party knows of the error in the instrument or the circumstances are such that he will be presumed to know of it."

While the *Beyer Case*, supra, dealt with the right of reformation on the ground of mistake, the same rule applies, and with equal force, to reformation on the ground of fraud. Here the circumstances were such that plaintiff must be held to have known that the assessments embraced not only maintenance charges, but bond interest as well. If, as they now contend, the contract of purchase was intended to relieve them from assessments for the bonds of the district, they should not have been paid the assessments over such a long period. Such payments, in strict conformity with the contract as written, for such a period of time, preclude plaintiffs from asserting that the written agreement did not truly express the intention of the parties.

While ordinarily estoppel is a matter of defense which must be pleaded as such, yet it is the rule that if plaintiff's pleading discloses that he is estopped, the question may be raised by demurrer. (*Shipler* v. *Potomac Copper Co.*, 69 Mont. 86, 220 Pac. 1097.) Reformation under section 8726, Revised Codes, on the ground of fraud must be sought with reasonable diligence after the discovery of the fraud. The complaint discloses on its face that the fraud, if any existed, should have been known as early as 1928. Relief by reformation was as available then as now. Instead of seeking reformation plain-

tiffs made the payments of assessments contrary to what they contend the contract called for if properly written. Under such circumstances they are too late to seek reformation. (*Barfield* v. *Price*, 40 Cal. 535; *Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764; *Akey* v. *Great Western B. & L. Assn.*, 110 Mont. 528, 104 Pac. (2d) 10.) Laches appearing on the face of the complaint, the demurrer should be sustained. (*Lewis* v. *Belk*, 219 Ala. 343, 122 So. 413.)

Plaintiffs also attempt to seek relief from such assessments because of fraud practiced upon the court in that the proceedings looking to the authorization of the bond issues were invalid because of the alleged fact that the commissioners were not qualified as commissioners and, hence had no standing to represent the district in proceedings before the court.

That part of section 7211, Revised Codes, above quoted, precludes the plaintiffs from now questioning the validity of the ▇ bond issues and assessments. Plaintiffs seek to avoid the effect of this section on the ground of fraud. The fraud alleged, however, is intrinsic and not extrinsic, and for that reason furnishes no ground for attacking the judgments. (*Kennedy* v. *Dickie*, 34 Mont. 205, 85 Pac. 982; *Dunne* v. *Yund*, 52 Mont. 24, 155 Pac. 273; *Bullard* v. *Zimmerman*, 82 Mont. 434, 268 Pac. 512; *Minter* v. *Minter*, 103 Mont. 219, 62 Pac. (2d) 233.)

The district court reached the correct conclusion in sustaining the demurrer to the complaint. The judgment appealed from is accordingly affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.