EDWARD J. SCHILLINGER, Plaintiff and Respondent, also Appellant, v. PAUL L. HUBER, Executor of the Estate of Albert Huber, Deceased, Defendant and Appellant, and KATIE HUBER, His Wife, Defendant and Respondent.

No. 9526.

Submitted November 20, 1957. Decided January 15, 1958.

320 Pac. (2d) 346.

Louis P. Donovan and Patrick L. Donovan, Shelby, Pershing, Bosworth, Dick & Dawson, Winston S. Howard, Denver, Colo., Weir, Gough & Matson, Helena, for appellant. Winston S. Howard argued orally.

Leavitt & Lucas, James P. Lucas, Miles City, Oscar Nesvig, Wibaux, Hoover & Hoover, Circle, for respondent. James P. Lucas argued orally.

THE HON. ROBERT J. NELSON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY.

Appeal from a judgment of the district court of McCone County reforming a deed in which the defendants, Albert Huber and Katie Huber, were the grantors and the plaintiff, Edward J. Schillinger, was the grantee.

The facts in the case are as follows: Defendants are husband and wife. On or about August 14, 1944, the plaintiff went to the farm home of the defendants for the purpose of purchasing a half section of land from the defendants. At that time the defendant, Katie Huber, was not home. Plaintiff, Edward J. Schillinger, and defendant, Albert Huber, discussed the proposed purchase of the aforementioned land in the presence of Paul Huber, son of the defendants. On August

16, 1944, plaintiff Schillinger and defendant, Albert Huber, went to the First State Bank in Wolf Point, Montana, where Fred Rathert, president of the bank, prepared a contract for deed which was then executed by plaintiff Schillinger and defendant, Albert Huber, and upon which plaintiff made a $3,000 down payment. Katie Huber was not present at the bank nor did she execute the contract. One provision of the land sale contract reserved 6¼ per cent of all oil and gas rights or royalties to the defendants.

On January 20, 1945, plaintiff and the defendants met at the bank in Wolf Point for the purpose of the preparation and delivery of a deed of the lands to the plaintiff. Present at the time were the plaintiff, both defendants and Fred Rathert, however none of those present had a copy of the contract previously executed.

The plaintiff testified that he had forgotten at that time that there was a written contract for deed, and there is no evidence that the defendant, Albert Huber, ever had a copy, nor that Katie Huber ever saw or knew of its terms. There is testimony that Rathert, who did not testify at the trial, asked for the contract for deed, but that Albert Huber stated the terms of the deed and the reservation to Rathert and that Rathert questioned his statement thereof. The plaintiff unequivocally and repeatedly testified that he recalled the terms of the agreement at that time and that he protested at such time, but that the deed was prepared in accordance with Albert Huber's quotation of its terms, and contrary to the reservation contained in the previously executed contract for deed.

The plaintiff, however, despite his objections to the form of the reservations in the deed, accepted the same for the reason, "I wanted to get lined up with the Triple A on my farming for the spring."

There was no further discussion between the plaintiff and the defendants with regard to the matter until the fall of 1951, after oil had been discovered on land approximately four miles due east from the land in question. At that time

the plaintiff talked to the defendant, Albert Huber, about leasing the land for oil and in reply Albert Huber told plaintiff that he, the plaintiff, had nothing to do with such leasing of the land. Plaintiff did not pursue the matter further at that time for the reason as he stated: "Because I figured there was nothing to talk about any more than of the day the deed was executed. * * * Well, the day the deed was executed I had no more proof and up to this time I still had no more proof, I was right and he was wrong." Plaintiff testified further that about February 1, 1952, while hunting for the registration card of a pickup truck, he found the contract for deed, and that this was the first "actual knowledge" he had of the difference between the deed and the contract. Thereafter between April 1, 1952, and the time suit was filed May 11, 1953, plaintiff made several demands on the defendants for a correction deed, which defendants failed and refused to give.

Plaintiff brought suit to reform the deed in accordance with the provisions of the prior executed contract for deed. Although his grounds for demanding this relief are stated ambiguously, the purport of his main allegations seem to be based upon mistake or fraud or both.

The case was tried to the court sitting with a jury. Two interrogatories were submitted to the jury for answer. The jury answered the first interrogatory by finding that the defendant, Albert Huber, at the time of the execution of the contract for deed intended to reserve 6¼ per cent of all oil and gas rights or royalties as was stated in the contract. The second interrogatory was answered that the plaintiff did not accept the warranty deed delivered by the defendants to the plaintiff, which reserved to the defendants all but 6¼ per cent of the oil and gas rights, as full and complete satisfaction of the contract for deed.

The court adopted the two findings of the jury and further found: that the defendant, Katie Huber, did not sign the contract for deed, and that until plaintiff discovered his executed counterpart of the contract for deed in February of 1952 the

plaintiff had no means of knowing the wording of the reservation contained in said contract.

The court concluded from the findings that after the discovery of the mistake, the plaintiff had exercised due diligence in the institution of the action; that the plaintiff was entitled to judgment against the defendant, Albert Huber, reforming the deed as to Albert Huber only, and dismissing the action as to defendant, Katie Huber. Judgment was entered accordingly.

The defendant, Albert Huber, appealed from the adverse judgment upon four specifications of error. However, since discussion of the last specification will dispose of this case, comment on the other three will be dispensed with as unnecessarily encumbering this opinion.

The fourth specification assigns as error the contention that the evidence introduced does not support the judgment because: (a) The plaintiff failed to sustain the burden of proof as to fraud, mutual mistake or unilateral mistake known to the defendant; (b) When plaintiff accepted the deed with full knowledge of a variance between the reservation in the deed, and that contained in the antecedent written contract, the provisions of the contract became merged in the deed; and (c) By accepting delivery of the deed and by remaining in possession for all these years, plaintiff acquiesced in the deed.

The plaintiff specifies error in the judgment because the court dismissed the action against the defendant, Katie Huber, contending that the dismissal deprives him of property which he purchased, and allows the defendants, because they are husband and wife, to be wrongfully enriched at his expense.

With regard to part (a) of specification No. 4, this court is of the opinion that proof, as specified in the assignment of error is entirely lacking as to either fraud or mistake. An examination of facts in the case clearly negatives any cause of action for reformation based upon these grounds. With regard to proof of fraud, see Stagg v. Stagg, 96 Mont. 573, 590, 32 Pac. (2d) 856; Power & Bro. v. Turner, 37 Mont. 521,

535, 97 Pac. 950; Buhler v. Loftus, 53 Mont. 546, 165 Pac. 601; Bump v. Geddes, 70 Mont. 425, 226 Pac. 512.

Mutual or unilateral mistake is also not applicable. If plaintiff, as he testified, knew of the mistake it could not be mutual mistake. R.C.M. 1947, section 17-901, which states the grounds for reformation of a written instrument, does not grant the right of revision to a plaintiff who knows that the defendant is acting under mistake with regard to a writing. Rather it grants the right of revision or reformation of an instrument to the aggrieved party; that is, the party who is acting under mistake while the other party to the writing knows or suspects his mistake. Neither of these are applicable to the facts and proof adduced on the trial of the present case.

The jury's finding on interrogatory No. 2 brings up the questions raised by Albert Huber's specification of error No. 4(c), to wit: that the plaintiff acquiesced in the deed by accepting delivery thereof when he had full knowledge of its variance from the contract, and his specification of error 4(b), to wit: that the provisions of the contract became merged with the deed when the plaintiff, with full knowledge of the variance between the instruments, accepted the deed.

The finding by the jury that the plaintiff did not accept the deed, as full compliance with the contract for deed, clearly shows the jurors found that he had knowledge of the variance between the instruments. This finding was absolutely in keeping with all the evidence in the case and was the only finding the jury could have reached under the evidence. While the defendant Huber denied that the plaintiff questioned the reservation in the deed, it is undisputed and uncontradicted that the scrivener, Mr. Fred Rathert did, and the plaintiff repeatedly testified he knew that the reservations in the two instruments were different, and that he knew exactly how they differed. There is no question that the plaintiff knew of the variance in the instruments. It is undisputed and uncontradicted in the evidence that he took the deed and paid the balance of the purchase price under the contract because, as he

said: "I wanted to get lined up with the Triple A on my farming for the spring," and because, as he said: "Well, the day the deed was executed I had no more proof and up to this time I had no more proof I was right and he was wrong."

It is unquestionable and certain from the evidence that, ██ though the plaintiff was dissatisfied with the deed at the time, he accepted it. Having accepted it with full knowledge that it was not in conformance with his contract, the question of whether or not he accepted it as full compliance with his contract for deed was a question of law to be determined by the court, and not a question of fact to be determined by the jury. Interrogatory No. 2 should not have been submitted to the jury.

It is a well-recognized rule of law, in this state, that a person who is not acting under mistake or fraud and who acquiesces in an error loses his right of objecting to the error. This is the effect of our statute.

Section 49-108, R.C.M. 1947, provides: "Acquiescence in [an] error takes away the right of objecting to it."

In construing the foregoing statute this court, in the case of Krueger v. Morris, 110 Mont. 559, 567, 568, 107 Pac. (2d) 142, 147, held: "It is well-settled that acquiescence in a contract after learning that it does not represent the actual agreement, destroys the right of reformation. This is the effect of our statute, section 8745, Revised Codes, [1921, now R.C.M. 1947, section 49-108] and to the same effect is Cook-Reynolds Co. v. Beyer, 107 Mont. 1, 79 Pac. (2d) 658, 661. In the Beyer case we quoted with approval the following from 23 R.C.L. 347:

" 'If a party acquiesces in an instrument after becoming aware of the mistake, he loses his right to reformation. The acquiescence may be direct or implied. If for instance a deed, through mistake, conveys too much land, the vendor cannot have it corrected, if, after discovery of the mistake, he receives the purchase money and yields possession to the vendee. The acquiescence in the written instrument may be implied from

an unreasonable delay in applying for redress after getting notice of the mistake. Of course there can be no acquiescence unless the party knows of the error in the instrument or the circumstances are such that he will be presumed to know of it.'

"While the Beyer case, supra, dealt with the right of reformation on the ground of mistake, the same rule applies, with equal force, to reformation on the ground of fraud."

The question in the instant case is not that of implied acquiescence arising from unreasonable delay in applying for redress after notice, although approximately eight years elapsed before the action was commenced. Rather we have the question of a purchaser who, at the time of the delivery of the deed, knew of the mistake and who paid the balance of the purchase price for the reason that he wanted the land so he could get on with his farming and because he didn't desire to prove or didn't believe he could prove the vendor's mistake. Regardless of his reasons for doing so, by paying the balance of the purchase price after he knew of the mistake in the deed, and when he was not acting under fraud he can only be held to have acquiesced in the mistake.

The instant case is the exact converse of the illustration of the rule in point, taken from 23 R.C.L. 347, and contained in the quotation from the Krueger case, supra. Instead of having a vendor who through mistake conveyed too much land, and after discovery of the mistake accepted the purchase money and yielded possession, we have a vendee who after discovery of the mistake in a deed, which failed to convey all he was entitled to, paid the purchase price and went into possession of the land.

The plaintiff in this action must be held as a matter of law to have acquiesced in the deed. Such being the case the written contract for deed was abrogated by the deed and the terms of the contract for deed merged in the terms of the deed. Humble v. St. John, 72 Mont. 519, 234 Pac. 475; Morehouse v. Northern Land Co., 68 Mont. 96, 216 Pac. 792; Hollensteiner v. Anderson, 78 Mont. 122, 252 Pac. 796.

In view of what has been heretofore said, it is probably unnecessary to consider plaintiff's specification of error with regard to the district court's dismissal of the action against the defendant, Katie Huber. Yet because no attempt was made in what has been said heretofore in this decision to differentiate between the status of the defendant, Albert Huber, and the status of his wife, Katie Huber, and in order that there be no uncertainty with regard thereto, it is held that in addition to the reasons heretofore stated as to why plaintiff is not entitled to relief against either defendant, he is further precluded from relief as to the defendant, Katie Huber, by the provisions of section 22-116, R.C.M. 1947, which section provides: "No act, deed, or conveyance, executed or performed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the estates of married women, and no judgment or decree confessed by or recovered against him, and no laches, defaults, covin, or crime of the husband, shall prejudice the rights of the wife to her dower or jointure, or preclude her from the recovery thereof, if otherwise entitled thereto."

The defendant, Katie Huber, did not sign the contract for deed, and there was not a scintilla of evidence that she intended to join in a deed conforming to the contract for deed. The trial court properly entered judgment dismissing the action as to the defendant, Katie Huber, and improperly entered judgment for the plaintiff, Edward J. Schillinger, reforming the deed as to the defendant, Albert Huber.

For the reasons stated, the judgment dismissing the action against Katie Huber is affirmed, and that part of the judgment reforming the deed to conform to the contract for deed as to the defendant, Albert Huber, is reversed. The cause is remanded with directions to dismiss the action as to the defendant, and to enter judgment in the action for both defendants.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ANGSTMAN and ADAIR, concur.