NO.   94-070

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GOODMAN REALTY, INC., a Montana
corporation, GERRY L. SMITH and
KATHY A. SMITH, husband and wife,

      Plaintiffs and Appellants,

   v.

LAURA M. MONSON,

      Defendant and Respondent.

**FILED**

OCT 27 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Stephen C. Berg, Warden, Christiansen,
          Johnson & Berg, Kalispell, Montana

      For Respondent:

          William E. Astle, Astle & Astle,
          Kalispell, Montana

Submitted on Briefs:   September 22, 1994

Decided:   October 27, 1994'

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Goodman Realty, Inc., and Gerry and Kathy Smith jointly filed a complaint in the District Court for the Eleventh Judicial District in Flathead County requesting that Laura Monson execute a document clarifying the Smiths' rights regarding a drainfield on Monson's property which services the Smiths' property. Alternatively, if Monson refused to execute the requested document, plaintiffs sought a decree adjudging the location of the drainfield on the Monson property and declaring the existence of an easement for use of the drainfield appurtenant to the Smiths' property. Pursuant to Mont. R. Civ. P. 12(b), Monson filed separate motions to dismiss as to Goodman Realty and the Smiths. After considering the briefs of parties, the District Court dismissed with prejudice the claims of both Goodman Realty and the Smiths and entered orders. Goodman Realty and the Smiths appeal from those orders. We affirm the District Court.

The parties raise the following issues on appeal:

1. Does the complaint set forth sufficient facts to support a claim for reformation of a written instrument?

2. Did the Smiths acquiesce in the warranty deed?

3. Does Goodman Realty's pecuniary interest in the outcome of the Smiths' claim against Monson create a basis upon which Goodman Realty may bring a claim against Monson?

Because this appeal arose from the District Court's granting of a motion to dismiss, the record in this case consists of the

complaint and the exhibits attached to it, which set forth the following facts:

Prior to April 1986, Jean Peterson owned an undivided parcel of land in Flathead County. In April 1986, Peterson divided the parcel into two separate tracts, Flathead County Assessor's Tract 4D and Tract 4DA. Tract 4D lies immediately east of Tract 4DA and adjoins the easterly property line of Tract 4DA.

In November 1988, Peterson's successor in interest, Beneficial Montana, Inc., doing business as Beneficial Mortgage Co. (Beneficial), conveyed Tract 4DA to Laura Monson. At the time of the conveyance to Monson, a drainfield servicing Tract 4D physically existed on Tract 4DA. The location of the drainfield is depicted on Flathead County Certificate of Survey No. 8549, dated April 21, 1986. The certificate of survey indicates that a "drainfield easement appurtenant to Tract 4D" existed on Tract 4DA. However, the deed of conveyance from Beneficial to Monson merely refers to the certificate of survey and fails to specifically describe any easement over Tract 4DA.

On May 13, 1993, the Smiths purchased Tract 4D by warranty deed from Paul and Phyllis Jenkins. Goodman Realty facilitated the Smiths' purchase. Prior to the sale, Goodman Realty and the Smiths agreed that Goodman Realty would post a $10,000 indemnity sum with Citizen's Title and Escrow Company to indemnify the Smiths in the event that Tract 4DA was not subject to a drainfield easement for the benefit of Tract 4D.

In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiffs and take the allegations of the complaint as true. King v. State (1993), 259 Mont. 393, 395-96, 856 P.2d 954, 955 (citing Willson v. Taylor (1981), 194 Mont. 123, 126, 634 P.2d 1180, 1182).

> When a case is dismissed pursuant to a pretrial motion and the credibility of witnesses is not an issue, the scope of review is broad and this Court may make its own examination of the entire case and make a determination in accordance with its findings.

King, 856 P.2d at 955. The dismissal will be affirmed only if this Court finds that the plaintiffs are not entitled to relief under any set of facts which could be proved in support of the claim. King, 856 P.2d at 955 (citing Proto v. Missoula County (1988), 230 Mont. 351, 352-53, 749 P.2d 1094, 1095-96).

<u>ISSUE 1</u>

Does the complaint set forth sufficient facts to support a claim for reformation of a written instrument?

The warranty deed conveying Tract 4D from the Jenkinses to the Smiths contains the following description:

> SUBJECT TO Drainfield easement over insured property [Tract 4D] for the benefit of Assessors Tract No. 4DA, as disclosed by document recorded July 21, 1988 as Doc. No. 88-203-08470, records of Flathead County, Montana.

The Smiths claim that the described easement is backwards, and that in fact a drainfield easement runs over Tract 4DA for the benefit of Tract 4D. To rectify the alleged error, the Smiths seek the equitable remedy of reformation.

4

The mistake of the **scrivener** or draftsperson who prepared the instrument alone is insufficient grounds for reformation. 66 Am. Jur. **2d** *Reformation of Instruments* § 12 (1973). The proper grounds for reformation are set forth in § 28-2-1611, MCA:

> **When** written **contract may be revised by court.** When, through fraud or a mutual mistake of the parties or a mistake of one party while the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

Absent a satisfactory showing of fraud, mutual mistake, or unilateral **mistake,** there is no basis for a court in equity to reform a written instrument. Plaintiffs do not allege fraud in the instant case. Therefore, we address only the issues of mutual and unilateral mistake.

Reformation of a written instrument for mutual mistake presupposes a prior complete and mutual understanding between the parties to the instrument. **McSweyn** v. Musselshell County **(1981),** 193 Mont. 525, 531, 632 **P.2d** 1095, 1098. Such a meeting of the minds is necessary because it serves as the standard from which the instrument may be reformed. Sullivan v. Marsh **(1950),** 124 Mont. 415, 422, 225 **P.2d** 868, 872. Mutual mistake, however, is not applicable where the plaintiff knew of the mistake. Schillinger v. Huber **(1958),** 133 Mont. 80, 85, 320 **P.2d** 346, 348.

Likewise, a plaintiff who knows of the mistake prior to executing the written instrument cannot sustain a claim for reformation based on unilateral mistake. Schillinser, 320 **P.2d** at

5

348. In *Story v. City of Bozeman* (1993), 259 Mont. 207, 223, 856 P.2d 202, 212, this Court explained that § 28-2-1611, MCA, specifies unilateral mistake as "the mistake of one party while the other at the time knew or suspected." Additionally,

> [i]n interpreting § 17-901, R.C.M. (1947), (the identical predecessor to § 28-2-1611, MCA), we stated that the right to reform a contract for unilateral mistake does not lie for the party who knew of the mistake in the contract; rather, it belongs to the aggrieved party who is laboring under a mistake known or suspected by the other party.

*Story*, 856 P.2d at 212 (citing *Schillinser*, 320 P.2d at 348). In *Story*, the City of Bozeman asserted that a typographical error in its contract with Mark Story Construction provided a sufficient basis for its reformation claim. Instead of listing the unit of measurement for the necessary materials in "CY" (cubic yards), the contract erroneously listed the unit of measurement in "CF" (cubic feet). Prior to executing the contract, however, the City of Bozeman had actual knowledge of the typographical error and failed to remedy it. We held that

> [a]s such, the City cannot claim that it was laboring under a mistake that the contract read "CY." Pursuant to *Schillinger*, the party who knows of the mistake cannot seek to reform the contract based on unilateral mistake.

*Storv*, 320 P.2d at 212.

The pertinent portions of the complaint in the instant case allege as follows:

VI

> Through drafting errors, instruments of records subsequent to April, 1986 erroneously described the drainfield easement as being located on the Smith property (Assessor Tract 4D) for the benefit of the

Monson property (Assessor Tract 4DA) rather than on the Monson property, where the drainfield is actually located, for the benefit of the Smith property. The deed by which Smith took title, Exhibit A hereto, werwetuates this error . . . .

VII

As reflected on Exhibit A [Jenkins-Smith warranty deed] hereto, Smith purchased the Smith property by warranty deed dated May 13, 1993. Prior to doing so, Smith understood the location of the drainfield serving the Smith property to be on the Monson property and that the Monson property was subject to an easement for that purpose, which easement was appurtenant to the Smith property. smith further understood that such belief was not supported bv various instruments of record including the deed by which Smith acquired title . . . .

(Emphasis added).

The complaint clearly demonstrates that the Smiths had actual knowledge of the location and operation of the drainfield on Tract 4DA. Furthermore, the complaint clearly demonstrates that before purchasing Tract 4D the Smiths had actual knowledge that the warranty deed described the alleged easement contrary to their understanding. Therefore, we conclude that the Smiths failed to set forth sufficient facts to support a claim for reformation.

<u>ISSUE 2</u>

Did the Smiths acquiesce in the warranty deed?

This Court reaffirms the longstanding rule of law that a person who is not acting under mistake or fraud and who acquiesces in an error loses his right to object to the error. Schillinger, 320 P.2d at 349; § 1-3-207, MCA. In Schillinger, buyer and sellers entered into a land sale contract in which the sellers reserved 6-1/4 percent of the oil and gas rights and royalties on the land

7

to be conveyed to buyer. Buyer and sellers later met to transfer title by deed: however, no one present had a copy of the land sale contract. Sellers stated to the scrivener preparing the deed that they reserved all but 6-1/4 percent (or 93-3/4 percent) of the oil and gas rights and royalties. Buyer testified that he knew at that time that the terms of the deed varied from the land sale contract. Despite his knowledge of the variance, buyer testified that he voluntarily accepted and executed the deed and paid the balance of the purchase price. Seven years later, buyer found a copy of the land sale contract and brought suit to reform the deed after sellers refused to correct it. This Court held that, because the buyer accepted the deed with knowledge of the mistake, the right of reformation was destroyed. Schillinser, 320 P.2d at 347, 350.

In the instant case, the District Court concluded that the Smiths are not entitled to reformation because they received the deed to Tract 4D with actual knowledge that, although the drainfield was physically located on Tract 4DA, the alleged easement for use of the drainfield was erroneously recorded against Tract 4D. We agree.

In their brief on appeal, the Smiths argue that

[w]hen Monson refused to execute a document clarifying who had an easement on whose property [], the Smiths had to make a decision. The question was whether to go forward, purchase the property from Jenkins and resolve the easement matter later with Monson or the District Court, or refuse to purchase the property. They chose the former alternative . . . .

The Smiths, therefore, voluntarily accepted the warranty deed from the Jenkinses, knowing that its terms expressly failed to conform

8

with their understanding of their rights. We conclude that, in doing so, the Smiths acquiesced in the warranty deed as executed.

The Smiths argue that the brief length of time between the execution of the deed from the Jenkinses and the filing of the complaint in this case is relevant to show that they did not acquiesce in the warranty deed. However, the length of time between notice of the mistake and application for redress is relevant only to implied acquiescence. Schillinser, 320 **P.2d** at 349-50. The Smiths' acquiescence here is direct, not implied. Like the plaintiff in Schillinger, the Smiths knew of the mistake at the time of delivery of the deed, yet voluntarily executed the agreement despite that knowledge. The Smiths' reasons for doing so are not relevant. This Court, in Schillinaer, stated:

> Regardless of [the purchaser's] reasons for doing so, by paying the balance of the purchase price after he knew of the mistake in the deed, and when he was not acting under fraud he can only be held to have acquiesced in the mistake.

Schillinuer, 320 **P.2d** at 350.

We hold that the Smiths acquiesced in the warranty deed.

### ISSUE 3

Does Goodman Realty's pecuniary interest in the outcome of the Smiths' claim against Monson create a basis upon which Goodman Realty may bring a claim against Monson?

Plaintiff Goodman Realty placed its $10,000 real estate commission for the sale of Tract 4D in escrow to indemnify the Smiths in the event that a drainfield easement over Tract 4DA for the benefit of Tract 4D did not exist. Because the release of the

9

$10,000 depends on the resolution of the dispute between the Smiths and Monson, Goodman Realty argues that its pecuniary interest in the outcome is sufficient to create a cause of action between Goodman Realty and Monson. Goodman Realty argues that

> [i]n an action to reform a deed, all parties claiming an interest to the land or any part thereof purportedly conveyed by the instrument sought to be reformed, and whose interests will be affected by the reformation of the instrument, are necessary parties to the action.

66 Am. Jur. 2d *Reformation of Instruments* § 100 (1973). While this may be a correct statement of the law, Goodman Realty alleges no interest in the property of either the Smiths or Monson. Its only interest is in the $10,000 indemnification sum which is wholly unrelated to the property interests at issue. Further, the complaint does not allege that Monson breached any duty owed to Goodman Realty. In fact, Goodman Realty admits that Monson owes it no legal duty. Goodman Realty clearly does not state a cause of action against Monson, and the District Court correctly dismissed its claim.

We affirm the orders of the District Court dismissing with prejudice the claims of the Smiths and Goodman Realty.

Affirmed.

_____
Justice

10

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

October 27, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Stephen C. Berg
WARDEN, CHRISTIANSEN, JOHNSON & BERG
P. 0. Box 3038
Kalispell, MT 59903-3038

William E. Astle
ASTLE & ASTLE
705 Main Street
Kalispell, MT 59901


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy