MR. JUSTICE WEBER
delivered the opinion of the Court.
This is an appeal by the defendants from a judgment of the District Court, Fourteenth Judicial District, Musselshell County, declaring certain oil and gas leases owned by the plaintiff, Donald McSweyn, to be valid. We reverse the judgment of the District Court.
Defendants raise these issues on appeal:
1. Where the provisions of a contract for deed between Musselshell County and A. D. Shields, containing a 2% percent mineral reservation, merged into a subsequent deed between those parties in which the County reserved a 2% percent royalty interest?
*527 2. Is a quiet title decree entered prior to the execution and delivery of the deed from the County to Shields, res judicata as to the successors in interest and other parties in this case?
3. Did the deed in which the County reserved the royalty interest result in an unconstitutional gift to Shields?
4. Is McSweyn barred by estoppel, laches, or waiver from claiming that the County has a mineral interest rather than a royalty interest?
This case comes to us on an agreed statement of facts. The County through tax proceedings had acquired the real property described in the oil and gas leases to McSweyn with which we are concerned. In 1933 the County entered into a contract with Shields for the sale to Shields of the real property. The contract contained the following reservation:
“. . . vendor [County] reserved to itself and its successors an undivided two and one-half percent of all oil, gas and other minerals lying in, under and beneath the premises hereinbefore described
All parties agree that the above language created a mineral reservation.
Before full payment had been made and deed delivered under the 1933 contract for deed, Shields filed a quiet title action against the County and other defendants which resulted in a 1943 decree. The decree in part stated:
“. . . A. D. Shields, is the owner, seized in fee and entitled to the possession of the following described real property . . . excepting and reserving to the said defendant Musselshell County, Montana, 2lh% of all oil, gas or other minerals lying in, under and beneath [the said land] ...”
Approximately one year later, in 1944, the County executed and delivered to Shields a deed covering the property in question which contained the following reservation:
“. . . and reserving unto . . . [the County] its successors and assigns, an undivided two and one-half percent royalty of all oil, *528 gas, and other minerals lying in, and that may be produced from the premises hereinbefore described, delivered free of cost ...”
The parties again agree that the foregoing deed language constitutes a royalty reservation as distinguished from the mineral reservation contained in the contract for deed.
After 1944 the lands described in the deed were transferred by Shields and his successors in interest to other parties. In 1974, 30 years after the deed, the successors in interest of Shields executed oil and gas leases to Exeter Company, which assigned its interest to Exeter Exploration Company, which in turn made partial assignments to True Oil Company. Oil wells were drilled on the lands in 1976 and four of the five wells drilled are presently producing oil.
In 1976, one day before drilling started on the first well, plaintiff, McSweyn, obtained from the County the first of his oil and gas leases covering the County’s mineral interest in the lands. The second lease was obtained by McSweyn from the County 19 days later. The McSweyn leases, which are valid only if the County owned and retained a mineral interest rather than a royalty interest, contained the following disclaimer:
“The execution of this instrument shall in no way prejudice the right of Musselshell County to claim its interest is a royalty interest rather than a mineral interest.”
McSweyn brought this action in 1977 asking the District Court to declare and determine his rights and interests under his oil and gas leases from the County. After the commencement of that action, the County entered into a written agreement with all of the real property owners, who are Shields’ successors in interest, and other parties. The agreement covered the land involved in this action as well as other lands. The agreement points out that the County executed contracts for deed containing mineral reservations, not only covering the Shields land but also other County lands. All of such contracts for deed were followed by deeds containing royalty reservations similar in form to the deed to Shields. The agreement further stated:
“The parties hereto are desirous of settling these differences and *529 settling the County’s interest in the above described property, and the parties hereto mutually agree that where the deeds from the County to the various Purchasers show that there was a 1'h % royalty, that said royalty interest be considered to be a 2% interest, and wherever the County reserved a 6lA% royalty in the above described property, that said interest be considered to be a 4% royalty interest. Furthermore, the County makes no claim to any mineral interest in the above described property, and makes claim to only royalty interest as set forth above.”
The agreement further conveys to the County the 2 percent royalty interest in the land described in this case.
The District Court held that the contract for deed contained a reservation of mineral interest and the issuance of the deed at a later date gave Shields more than he had bargained for. The court found that a mineral interest is more valuable than a royalty interest and that the deed by the County to Shields was an unconstitutional donation or gift by the County. The court further found that the 1943 judgment in the quiet title action cannot be attacked and that such decree commanded the County to issue a mineral interest deed which the County failed to do. The court further found that the 1943 decree is res judicata in this proceeding. The court found no element of estoppel or laches and held that the waiver argument fails in that it presupposes that the County could give away its mineral interest without compensation. The District Court found the McSweyn leases to be valid.
The law of oil and gas in Montana passed through periods of growth and change during the 1930’s and 1940’s. Judge Jameson refers to the statutory history in Superior Oil Co. v. Vanderhoof (1969), 307 F.Supp. 84. He points out that section 4481.2, R.C.M., 1935, described the reservation which a county could make during the 1930’s. That code section is confusing. It refers to mineral right reservations and then uses terminology which is more consistent with royalty reservations. The statute was so confusing that it would have been difficult for any county official to determine the correct application. Superior Oil Co. points out that the code *530 section was repealed by Chapter 171 of the session laws of 1941, which also provided that on sales of real property “the county may reserve not to exceed six and one quarter percent [QlA%) royalty interest in the oil, gas and minerals produced and saved from said land.”
In this case, the 1933 contract between the County and Shields attempted to follow the old code section and contained a reservation of a 2Vi percent mineral interest. The 1943 decree quieting title contained the same reservation. That quiet title decree is not particularly significant. It was brought by the then county attorney for Musselshell County. Our fact situation is similar to that described by Judge Jameson in Superior Oil Co.:
“Nor is the decree quieting title particularly significant. It simply sets forth the reservation as it appeared in the deeds [in our case the contract for deed]. Obviously no issue was raised in that action as to whether the reservation was a mineral or royalty interest. As noted supra, apparently the county attorney represented the Vanderhoofs in the action. [This was also true as to Musselshell County and the county attorney.] No appearance was made by the county ...” 307 F.Supp. 91.
Next in this case is the 1944 deed in which the County reserves an undivided 2% percent royalty interest. This is the first time the County directly participated after the 1933 contract. In 1944 the County was operating under the 1941 session laws. While there is no evidence in the agreed statement of facts, the statutory history gives an obvious explanation for the change in the provisions of the deed.bythe County. The deed was accepted by the grantee, Shields, and recorded. No question was raised by either party for more than 30 years.

Merger By Deed

McSweyn requests that his oil and gas leases by found valid, and the District Court so determined. It is important that we keep in mind that this request has the effect of asking the court to reform the 1944 deed. We must, therefore, consider the rules regarding reformation of deeds and merger.
*531 In substance McSweyn contends that the 1944 deed should be reformed because of the mutual mistake of the County and Shields: The elements for such reformation are set out in Voyta v. Clonts (1958), 134 Mont. 156, 328 P.2d 655, as follows:
‘A sequence statement of reformation is this: There is a prior understanding of the parties; somewhere and sometime between the understanding reached and the actual creation of the written instrument, a mistake occurs. It occurs in reducing to writing the agreement which the parties have intended. Obviously the alleged mistake must relate to something then in the contemplation of the parties. The fault sought to be corrected is that the executed written instrument does not reflect the actual and true understanding of the parties. This is a cardinal principle in the field of reformation for the mutual mistake. Then, and only then, can the powers of equity be invoked to correct the mistake.’ ” (Emphasis added.) 134 Mont. 166, 328 P.2d 661.
McSweyn contends that the fault sought to be corrected is that the 1944 deed does not reflect the actual and true understanding of the parties as contained in the 1933 contract. However, as stated in Voyta, in order to reform the deed on the ground of mutual mistake, the evidence of mistake must be clear, convincing and satisfactory. The court in Voyta further states:
‘The presumption is that the writing contains the final agreement of the parties and expresses their real purpose and intent. To meet and overcome that presumption plaintiff was required to present clear, convincing and satisfactory proof. 134 Mont. 167, 328 P.2d 661.
Other than the instruments, there is no evidence in the record concerning the intent of the County and Shields at the time of the 1944 deed. In addition there is absolutely no evidence of mutual mistake unless we should find that the instruments themselves show such mutual mistake.
As stated above, we begin with the presumption that the 1944 deed contained the final agreement of the County and Shields and expressed their real purpose and intent. The District Court *532 found that the 1943 quiet title decree was res judicata as to the interests of the party and defined the County’s reservation as a 2Vi percent mineral interest. Res judicata is discussed later in this opinion. While it is true that the decree specified the interests of the parties in 1943, that does not prevent the parties from making a subsequent change in their respective interests. The 1944 deed shows that the County made a change in its reservation. As we pointed out in our brief history, the 1941 statute afforded a reasonable explanation for the change on the part of the County. The execution of a deed by the County in 1944 containing a royalty reservation does not on its face indicate mutual mistake as between the parties when compared to the 1933 contract for deed. As stated in Voyta:
“ ‘It cannot be said that the evidence in this case is either clear, convincing, or satisfactory, as to the alleged mistake. . .’ ” 134 Mont. 167, 328 P.2d 662.
In addition, the County and all other parties agreed in 1977 that the 1944 deed reserved a royalty. Not one of the interested parties' are claiming mutual mistake. The only claim of mutual mistake is made by McSweyn, who seeks to apply a technical rule which directly contradicts the desires of the parties who own the mineral and royalty interests. Equitable principles do not allow this Court to reform the deed in direct disregard of the mutual understanding of all of the parties owning an interest in the property. Equity also requires that we consider the effect on the County. There are a number of operating wells on the land in question. If the County’s interest is a royalty, the County will be entitled to receive 2 percent of production under its agreement with the balance of the parties. If the McSweyn contentions are upheld, the County will lose more than 80 percent of such 2 percent of production. The benefit of the difference flows primarily to McSweyn.
McSweyn has agreed that the execution of his leases with the County shall in no way prejudice the right of the County to claim its interest is a royalty interest rather than a mineral interest. The *533 County does claim that its interest is a royalty interest. It would be inequitable to disregard this provision.
We find that the plaintiff has failed to overcome the presumption that the 1944 deed contains the final agreement between the parties and that the doctrine of merger does apply, so that the 1944 deed effectively reserved to the County the 2*/2 percent royalty interest described in the deed.

Unconstitutional Gift

Although the issue had not been presented by either party, the District Court concluded that all things being equal, a mineral interest in real property is more valuable than a royalty interest. Reasoning from that position, the court concluded that the deed resulted in an unconstitutional gift or donation by the County to Shields.
Rist v. Toole County, (1945), 117 Mont. 426, 159 P.2d 340, points out that the holder of a mineral interest has an interest in the land and has the right to go on the property, to explore and drill for oil and gas and the obligation to pay for a proportionate share of development costs. A holder of a royalty interest does not have the right to go on the property to explore for undeveloped oil and gas, but the royalty holder is not obligated to pay the costs of development. The holder of the royalty interest simply shares in the profit from production. The District Court apparently concluded that because the mineral interest holder has greater rights with respect to real property itself than the royalty interest holder, such a mineral right has greater value. There is nothing in the agreed statement of facts to show the comparative values of royalty and mineral interests in this particular land. The agreed statement of facts does show that the royalty interest which we find is owned by the County will have a much larger present share in production than would be true of a mineral interest. As a result, we conclude that the record does not show a 1944 gift, or the equivalent, by the County to Shields.

*534
Quiet Title Decree As Res Judicata

The District Court held that the 1943 quiet title action which was completed prior to the issuance of the 1944 deed was res judicata as to the present action. The District Court relied on Smith v. County of Musselshell (1970), 155 Mont. 376, 472 P.2d 878. We do not find Smith to be authority for the position taken by the District Court. There are major differences between the Smith case and the present case.
In the Smith case, on June 4, 1941, Musselshell County (the same county as involved in the present case) entered into a contract for deed in which it reserved an undivided 6lA percent of all oil, gas and other minerals lying in, under and beneath the premises. Next by deed dated April 5, 1944, the County conveyed the land by a deed in which it reserved an undivided 6 percent royalty of all oil, gas and other minerals lying in, and that may be produced from the premises hereinbefore described, delivered free of cost. In 1945, the buyer from the County brought an action to quiet title to the land, in which the County’s reservation was decreed to be 6lA percent of all oil, gas and other minerals lying in and that may be produced from the said premises. The County attempted to argue that under the 1941 statute, the County could reserve only a 6‘A percent royalty interest and excluded the right of the County to reserve a mineral interest. In the Smith case this Court found that the 1945 decree was res judicata of the particular issues involved. The result is that in Smith the quiet title decree was the last conclusive statement concerning the interests of the parties, having been entered after the deed from the County. In contrast, in the present case, the quiet title action occurred before the deed was executed, delivered and accepted. Therefore, the quiet title is not res judicata of the interests of the parties here involved. See Brannon v. Lewis and Clark County (1963), 143 Mont. 200, 387 P.2d 706.
As previously discussed, the 1943 decree was not the result of litigation between Shields and the County. The County defaulted. The *535 attorney for Shields was also the county attorney. Our fact situation is comparable to that in Superior Oil Co. Because the issues involved in the 1943 quiet title action are not of necessity the same issues involved in the 1944 deed, because the mineral interest question was not litigated in the quiet title action, and because the deed was executed, delivered and accepted the year following the issuance of the quiet title decree, the quiet title decree is not res judicata.
Estoppel, Laches and Waiver
The agreed statement of facts suggest that there may be a proper basis for the application of the doctrines of estoppel, laches and waiver. However, in view of our opinion on the other issues, it is unnecessary for us to reach decisions on these theories.
We also note the approach of the Montana legislature to the question of longstanding conveyances and reservations involving mineral and royalty interests. In “validation” statutes such as sections 16-1122 and 16-1122.1, R.C.M., 1947, the legislature confirmed and validated mineral and royalty reservations made by counties. While we do not find it necessary to determine if such validation sections are applicable in the present case, we take note that the legislature deemed it worthwhile to eradicate doubts as to long-standing conveyances and reservations, some of which may have contained provisions which are questionable under its own “uncertain or ambiguous” statutes.
We find that Musselshell County owned a V-h percent royalty interest in the lands involved in this case and not a mineral interest and conclude that the oil and gas leases from Musselshell County to McSweyn did not grant an effective lease upon a mineral interest. The judgment of the District Court is reversed, and the District Court is instructed to enter appropriate judgment in conformity with this opinion.
MR. JUSTICES DALY, HARRISON, SHEA and MORRISON, and Gordon R. Bennett, District Court Judge, sitting for Mr. Chief Justice Haswell, concur.