No. 87-126

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

WEBCOR ELECTRONICS, INC.,
a/k/a WEBCOR

        Defendant and Appellant,

  -vs-

HOME ELECTRONICS, INC.,

        Plaintiff and Respondent.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Gordon R. Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard C. Conover, Bozeman, Montana
        K. Robert Foster, Bozeman, Montana

    For Respondent:

        Mike McCarter; Hughes, Kellner, Sullivan & Alke,
        Helena, Montana

---

Submitted on Briefs: March 11, 1988

Decided: April 21, 1988

Filed: APR 2 1 1988

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff/respondent Home Electronics, Inc., filed an action in District Court to recover damages for breach of contract, breach of the covenant of good faith, and fraud. The jury returned a verdict in favor of Home Electronics, Inc., and awarded $15,000 in compensatory damages and $50,000 in punitive damages. Defendant, Webcor Electronics, Inc., appeals and we affirm.

Plaintiff/respondent Home Electronics, Inc., (HEI) is a Montana corporation owned and operated by Bruce and Barbara MacIntyre. The corporation specializes in selling various electronic equipment including home telephones manufactured by the defendant/appellant, Webcor Electronics, Inc. (Webcor). HEI's marketing connection to Webcor was through a Denver, Colorado, sales representative firm known as Pike Marketing, Inc., which acted as a sales representative for Webcor. The MacIntyres dealt chiefly with Shelly Pike and Neil Lentsch at Pike Marketing.

In June 1983, the MacIntyres attended a consumer electronic show in Chicago and made contact with Pike and Lentsch who indicated that Webcor was now marketing an advanced business phone system. Subsequently, the MacIntyres were introduced to Brian Azar, national sales manager of Webcor telephones. The MacIntyres watched a demonstration of the phone systems and later met with Azar to discuss the possibility that they act as distributors. Azar inquired as to the MacIntyres' capabilities of handling a distributorship for the phones. The MacIntyres alleged that Azar made four specific promises during this discussion. Specifically, the MacIntyres stated Azar promised they would receive: (1) an exclusive distributorship for Montana, (2) hands-on training

2

for installing and repairing the systems, (3) a full refund for all unsold telephones if the distributorship failed to work out, and (4) documentation and information permitting them to connect the systems to telephone company lines.

The MacIntyres were informed that another Montana retailer was interested in the product and the first to act would receive the distributorship. The MacIntyres agreed to act and executed an order for five systems totalling $8,405. Other than the purchase order, no other document was signed at that time.

The MacIntyres subsequently began to spend a significant amount of money marketing the product. However, no sales occurred because the MacIntyres had not received installation training. Additionally, the record indicates Azar was actively soliciting an additional distributor for the Montana area. Azar visited the MacIntyres in mid-July 1983 for approximately two hours and had the MacIntyres sign documents which he stated would allow the MacIntyres to install the systems after their training. Despite numerous requests by the MacIntyres, Webcor failed to provide any training other than giving the MacIntyres an installation manual.

In February, 1984, the MacIntyres located a buyer for a system. Despite the fact that no training had been received the MacIntyres decided to attempt the installation. Upon contacting the phone company, they were informed they did not have sufficient permission to connect the system to the existing lines. The MacIntyres believed they already had sufficient clearance for the connection and entered a complaint with Webcor. Webcor promised to correct the problem, but the MacIntyres buyer rescinded the sale before any correction was made.

The MacIntyres later attempted to return the phone systems and in June of 1984, Webcor informed them that only $2,956.95 worth of the phone systems would be accepted as returns. This lawsuit followed.

Appellant Webcor raises five issues for our consideration on appeal:

(1) Was the District Court incorrect in failing to instruct the jury regarding independent contractors and agents?

(2) Did the District Court correctly determine that the parol evidence rule and statute of frauds had no application to the case?

(3) Did the District Court incorrectly refuse to give instructions regarding the Uniform Commercial Code?

(4) Did the jury find fraud on the part of Webcor by considering evidence which should have been ruled inadmissible?

(5) Were punitive damages properly awarded pursuant to the implied covenant of good faith and fair dealing?


1.  Instructions regarding independent contractors and agents.

Defendant Webcor asserts that the District Court erred when it refused to give jury instructions which distinguished an agent from an independent contractor. Webcor's theory was that Pike and Lentsch of Pike Marketing were related to Webcor on only an independent contractor basis. Therefore, Webcor concludes it is not liable for any actions or representations made by Pike or Lentsch. However, plaintiff HEI was not attempting to present evidence of wrongdoing by either Pike or Lentsch, and Webcor fails to point out evidence that would support such a finding by the jury. The instructions were properly refused because the evidence

4

presented by plaintiff demonstrating wrongdoings stemmed from the actions and representations of Webcor's employee Azar. We have held that "a party is not prejudiced by a refusal of proposed instructions where the subject matter of the instruction is not applicable to the facts or not supported by the evidence introduced at trial." In the Matter of the Estate of Hogan (Mont. 1985), 708 P.2d 1018, 1019, 42 St.Rep. 1711, 1712.

2. Parol evidence and statute of frauds.

Defendant Webcor states the District Court incorrectly refused to instruct the jury regarding parol evidence and the statute of frauds. Specifically, Webcor states the following parol evidence instruction should have been read:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented by evidence of consistent additional terms.

Webcor's source for this instruction is § 30-2-202, MCA. However, we refuse to conclude that the District Court was required to give the instruction. The "written agreement" entered by the MacIntyres on June 7, 1983 was merely a purchase order made through Webcor's marketing representative, Pike Marketing. While it is a contract for goods subject to the Uniform Commercial Code, the writing makes no mention of the additional promises made by Azar on behalf of Webcor. The record indicates that Azar made promises far beyond what the purchase order was ever intended to address and the writing was obviously not intended to be a

final expression of the agreement. The same could be said of the document later signed by the MacIntyres regarding their alleged competence to install the phone systems. This document was not intended to include any agreements regarding the distributorship and the services Webcor would guarantee the MacIntyres if they became distributors.

Additionally, we note the MacIntyres alleged a fraud and that parol evidence may be used to establish a fraud. Section 28-2-905(2), MCA. See also, Flemmer v. Ming (Mont. 1980), 621 P.2d 1038, 37 St.Rep. 1916. The alleged fraud in this case stems from Azar's oral representations and it would be an injustice to prohibit their consideration by the jury because they do not appear in writing. Such a rule would lead to an illogical requirement that a fraud must be demonstrated by a writing. We affirm the District Court's rejection of Webcor's instruction regarding parol evidence.

Webcor also alleges the District Court should have given the following instruction regarding the statute of frauds:

> One of the plaintiff's claims is for the breach of an agreement to allow the plaintiff to become an exclusive distributor of the phones marketed by defendant. If you find that such an agreement involved the sale of goods of a value in excess of $500, then such an agreement, to be enforceable, would be required to be in writing.

The District Court correctly refused the instruction. The purchase order for the goods themselves is a written contract which sufficiently fulfills the requirement that an agreement to purchase over $500 worth of goods be in writing. Section 30-2-201, MCA. The proposed instruction is misleading because it also requires a writing for any agreement as to the MacIntyres' receiving a distributorship. The proposed

6

instruction would have effectively required that any misrepresentation made by Azar be in writing. This is not what is required by § 30-2-201, MCA, and we affirm the District Court's decision refusing to give the instruction.

3. Instructions regarding the Uniform Commercial Code.

Webcor asserts the District Court committed reversible error by failing to give three instructions regarding statutes contained in Montana's Uniform Commercial Code. The proposed instructions would have advised the jury when an agreement could arise by performance, § 30-2-206, MCA, when additional terms become part of the contract, § 30-2-207, MCA, and what damages a buyer may recover for nonconforming goods, § 30-2-714, MCA. Webcor contends that by refusing the instructions the District Court effectively held "that the [Uniform Commercial Code] sales statutes had no application to the transactions which formed the basis of the plaintiff's complaint."

Webcor is correct in asserting that Montana's Uniform Commercial Code sales statutes control agreements to sell goods. Section 30-2-102, MCA. However, the proposed instructions are not applicable. The MacIntyres are not disputing the fact they entered a contract to buy goods from Webcor. Instead, the crux of their allegations is that Azar made untrue oral representations that caused them to enter an agreement which they would have otherwise not entered. Similarly, there is no claim that these representations are "additional terms" within the meaning of § 30-2-207, MCA, and this instruction is also inapplicable. Additionally, there is no claim that the merchandise itself was nonconforming. The MacIntyres did allege that Webcor failed to provide a connecting access number, but this allegation did not mean that the goods themselves were inadequate. Therefore, the

7

instruction based on § 30-2-714, MCA, which offers guidance for recoverable damages when goods are nonconforming, is also inapplicable.

4. Evidence of fraud.

Defendant Webcor states that the MacIntyres claim of fraud is based on four alleged misrepresentations by Azar: assurances of hands-on training, failure to provide a connecting number, failure to accept returns for refunds, and representations of an exclusive distributorship. Webcor contends that the jury reached the conclusion that Webcor committed fraud by considering improper evidence regarding each of these items.

Webcor states that the MacIntyres signed a document entitled "appointment of installation supervisor" effective July 1, 1983, which effectively relieved Webcor from providing any hands-on training for the MacIntyres or any further information regarding a connecting number. This document contained a merger clause providing that the document constituted "all the terms and conditions of [the] agreement and [superseded] any and all prior agreements and understandings written or oral." As a result of these provisions Webcor argues that any representations made to the MacIntyres prior to this agreement regarding training or a connecting number were inadmissible because the parties reached an integrated agreement.

Webcor's contentions fail to recognize the fundamental rule that parol evidence may be used to demonstrate fraud. Section 28-2-905(2), MCA. This rule remains the same under § 30-2-202, MCA, the provision addressing parol evidence in the sales chapter of the Uniform Commercial Code. See, Norwest Bank Billings v. Murnion (Mont. 1984), 684 P.2d 1067, 1071, 41 St.Rep. 1132, 1136. Moreover, the record does not

8

support the allegation that the parties intended the document to be the final expression of their agreement regarding the distributorship. Such a determination would be necessary under § 30-2-202, MCA. Instead, the document appears to focus on issues related only to the installation of the phones.

Webcor states it properly rejected the full refund requested by the MacIntyres because the shipping invoices provided: "No returns for credit accepted. Returns for repair or substitution only with prior written authorization." Webcor contends that these additional terms became part of the contract pursuant to § 30-2-207 which states in pertinent part:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional or different terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) the offer expressly limits acceptance to the term of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or was given within a reasonable time after notice of them is received.
>
> . . .

Since Azar had already represented that full refunds would be accepted, the additional terms could be construed to have materially altered the contract. At any rate, the additional terms contained in the shipping invoices would not cure or negate the misrepresentations previously made by Azar.

Finally, Webcor argues that any promises regarding an exclusive distributorship made by Azar in Chicago constitutes parol evidence and should not have been considered by the jury. In this assertion, Webcor largely repeats its argument that the jury should have received an instruction on parol evidence. As we have noted, parol evidence may be used to establish fraud. Section 28-2-905(2), MCA. Additionally, there is serious doubt as to whether the parties ever entered a written agreement which was intended to be a final expression of their agreement as required by § 30-2-202, MCA. The record demonstrates that Azar represented, and the MacIntyres intended, that the agreement between Webcor and HEI include much more than that contained in the few documents signed by the MacIntyres. In conclusion, we find the District Court correctly admitted, and the jury properly considered, evidence regarding the misrepresentations by Azar on behalf of Webcor.

5. Tort damages.

Webcor contends the District Court incorrectly allowed plaintiffs a tort recovery. Webcor asserts that the facts of this case address a contractual setting in which contract damages are the only appropriate remedy. Webcor recognizes that the MacIntyres allege a breach of the implied covenant of good faith and fair dealing, in addition to the breach of contract claim. However, Webcor states that this case deals with an ordinary commercial setting in which two parties negotiated with relatively equal bargaining power and without

10

any special relationship which would generate an exceptional duty. Webcor concludes that a breach of the implied covenant should not generate punitive damages under these circumstances.

We recognize that there has been considerable discussion as to whether a breach of the implied covenant should result in a tort remedy when the facts demonstrate the parties were operating in an ordinary commercial setting with equal bargaining power and without a special relationship. See, Note, Commercial Bad Faith: Tort Recovery for Breach of Implied Covenant in Ordinary Commercial Contracts 48 Mont.L. Rev. 349 (1987). However, this specific question need not be addressed in this case. The jury not only found a breach of contract and good faith, but also found actions constituting fraud. Reasonable punitive damages may be awarded where the defendant is found guilty of actual fraud. Section 27-1-221, MCA. In a case where the jury finds both fraud and a breach of the implied covenant of good faith and fair dealing, we hold that the plaintiff is free to pursue punitive damages.

Finally, Webcor asserts that this issue should be decided pursuant to the laws of the state of New York. Webcor points out that the document which gave Bruce MacIntyre the authority to install the phone systems had a provision which stated "the validity, performance and interpretation of this agreement shall be governed by the laws of the state of New York." Webcor's assertion has no merit because this written agreement was only intended to address those issues related to the installation of phone systems by Bruce MacIntyre. As plaintiffs point out, the document pertained only to installations and liability for installations, and had nothing to do with any purchase of goods, any return policy, any hands-on training, or any exclusive distributorship. Section 30-1-105(1), MCA, states

11

that if the partners do not choose which law is to be used, the Montana Code "applies to transactions bearing an appropriate relation to this state." Plaintiffs state that there is an appropriate relation to this state because the injury occurred in Montana, the respondent was domiciled and did business in Montana, the appellant actively solicited sales in the state through travelling representatives, the distributorship was to service Montana, and the appellants sales manager visited Montana to check on the plaintiffs and solicit another distributor. Based on these contacts, we find that it was not incorrect to apply Montana law.

For the foregoing reasons we affirm the decision of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12