No. 91-632

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

MARK STORY d/b/a
MARK STORY CONSTRUCTION,

       Plaintiff, Respondent and
           Cross-Appellant,

  -vs-

CITY OF BOZEMAN and
NEIL MANN,

       Defendants, Appellants and
          Respondents on Cross-Appeal.

FILED

JUN 24 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

        J. Robert Planalp and Steve Reida (both argued);
        Landoe, Brown. Planalp & Braaksma, Bozeman, Montana

     For Respondent:

        Gregory O. Morgan, (argued) Attorney at Law, Bozeman
        Montana

---

                      Submitted:  March 25, 1993

                      Decided:  June 24, 1993

Filed:

                           /Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Appellants City of Bozeman and Neil Mann appeal from a final judgment following a jury verdict in the Eighteenth Judicial District, Gallatin County, and from an order denying post-trial motions. Mark Story cross-appeals. We affirm in part and reverse in part.

We phrase the issues as follows:

1) Were the damages awarded against the City for breach of contract and/or breach of the covenant of good faith and fair dealing excessive and speculative or duplicative?

2) Did the District Court err in limiting the City's cross-examination of Story?

3) Does § 2-9-305(5), MCA (1985), bar Story from recovering against Neil Mann individually?

4) Did the District Court properly instruct the jury?

5) Did the special verdict form comply with Rule 49(a), M.R.Civ.P.?

6) Did the District Court err in permitting retrial of the issues of reformation, defamation and constructive fraud?

This case arises from a dispute over a construction contract between Mark Story Construction (Story) and the City of Bozeman (the City). In the early autumn of 1985, the City distributed bid schedules for the construction of the Durston and Valley View water mains. On Schedule I, the Durston water main, the unit measure for type 2 pipe bedding material was listed as "CY" (cubic yard), the customary unit measure for such material. On Schedule II, the

2

Valley View project, a typographical error listed the unit measure for type 2 pipe bedding material as "CF" (cubic feet). Story bid $25.00 per unit on both schedules. On September 30, 1985, the City awarded Story the construction contract. The engineering firm of Thomas, Dean, and Haskins (TD&H) was awarded the engineering sub-contract.

On October 9, 1985, Doug Daniels, the project engineer from TD&H, discovered the typographical error and left a telephone message for Story explaining the error. He followed the message with a letter. The City claims that Story returned Daniels' call the next day and assured the City that he meant to bid the Schedule II, type 2 pipe bedding material in cubic yards. Story denies this conversation took place. Story signed and returned the contract with "CF" listed as the unit measure of type 2 pipe bedding material on Schedule II. On November 12, 1985, the City executed the contract without changing the unit measure.

The minutes of a preconstruction meeting held November 21, 1985, do not contain any discussion of the error. Shortly after the meeting, Story began purchasing supplies for the project. When Story received his first pay estimate dated December 20, 1985, the disputed pipe bedding material was listed at $25 per cubic yard. Story crossed this out and wrote in "CF" before returning it to the City. The City recognized that Story had made the change but paid Story under pay estimate #1. Because work had not started, Story had not used any pipe bedding material; consequently, the City did not pay for pipe bedding material at either "CY" or "CF."

3

The City then issued a change order to change the contract to read "cubic yards" instead of "cubic feet" for the pipe bedding material in Schedule II. Story refused to sign the change order. Story similarly crossed out "CY" on the second pay estimate dated February 18, 1986.

Story began work on the project on March 3, 1986, but halted after a week due to wet, muddy conditions. Story worked sporadically and submitted three requests to the City for extensions of time on the contract; the City did not rule on the requests immediately. When he returned the third pay estimate dated April 29, 1986, he attached a signed statement setting forth his position regarding the unit measure of the type 2 pipe bedding material on Schedule II.

On May 9, 1986, a TD&H engineer informed city engineer Neil Mann (Mann) that Story had completed 46% of the work, but 86% of the time on his contract had elapsed. Mann wrote to Story's bond company, Balboa Insurance Company (Balboa), and relayed this information. Balboa then wrote to Story, referenced Mann's letter, and encouraged him to finish the project. Story walked off the job on June 9, 1986, with Schedule II nearly finished but Schedule I untouched.

On June 12, 1986, the City granted 23 of the 48 days Story had requested for an extension, and announced its intention to enforce the $450 per day liquidated damages clause of the contract. On June 16, 1986, Balboa canceled Story's bond. After the City submitted a claim on the bond, Balboa paid out $96,070.50 for

4

completion of the project.  Story did not accept the final pay estimate due to the ongoing dispute.

Story filed suit on December 12, 1986, for breach of contract, breach of the covenant of good faith and fair dealing, and defamation.  In the first trial, the jury awarded Story $360,000 in tort damages for breach of the covenant and $13,236 in contract damages.  In Story v. Bozeman (1990), 242 Mont. 436, 791 P.2d 767, (Story I), we concluded that the special verdict form used was misleading and remanded for a new trial. We also clarified the law regarding the covenant of good faith and fair dealing, concluding that a breach of the covenant is a breach of the contract and that only contract damages are due unless the parties have a special relationship.  Story I, 791 P.2d at 775-6.

After remand, Story amended his complaint to add a claim of intentional interference with contractual relations against Mann. Following the second trial, the jury awarded Story $850,000 in damages for breach of contract and/or breach of the covenant of good faith and fair dealing against the City.  It also awarded $100,000 in damages against Mann for intentional interference with contractual relations.  In its judgment on the verdict, the District Court assessed interest against both Mann and the City pursuant to § 25-9-205, MCA.

The City then moved for judgment notwithstanding the verdict or, alternatively, for a new trial.  The City argued, among other things, that Mann was immune from judgment and that substantial evidence did not support the verdicts against Mann and the City.

In its order on post-trial motions, the court amended the final judgment to preclude the accrual of interest against the City if the City paid the judgment within two years, pursuant to § 2-9-317, MCA. The District Court denied all other post-trial motions. This appeal follows.


Were the damages awarded against the City for breach of contract and/or breach of the covenant of good faith and fair dealing excessive and speculative or duplicative?

At the eight-day jury trial, Story presented the following figures concerning the damages claimed:

- Loss incurred because of forced sale of equipment      $111,115
- Future lost profits 1986-1996      $373,266
- Amount due on contract with the City      $230,747
- Loss of credit and reputation      $500,000

Story's expert economist, Arlen Smith (Smith) testified regarding the first two elements of damages; Story testified regarding the last two elements. The jury awarded Story $850,000 in damages against the City for breach of the contract and/or breach of the covenant of good faith and fair dealing.

The City makes two primary arguments concerning the proof of damages: that the damages claimed were excessive and speculative and that they were duplicative. Regarding its first contention, the City phrases the issue as whether the jury verdict of $850,000 is excessive and speculative, and argues that no evidence supports the verdict. It concedes, however, that evidence of record exists to support the verdict; therefore, we construe the City's argument to be that the proof of damages on which the jury award was based

6

was speculative and excessive. Story initially responds that the City did not object to the testimony at trial or otherwise adequately preserve either argument for appeal. Accordingly, we focus on this threshold matter.

At trial, Smith testified specifically, and without objection, regarding the amount of damages for lost future profits and loss caused by forced sale of equipment. The District Court also admitted Smith's two economic reports detailing his analysis of Story's damages without objection. Story testified regarding his calculation of the amount due on the contract without objection. The City did not mention the issue of speculative damages in its opening or closing arguments, did not raise the issue in its post-trial motions, and did not refer to "speculative or excessive damages" in any colloquies of record with the court.

It is elementary that unless a party urging error has made timely objection to evidence or testimony at the trial level, it will not be considered by this Court on appeal. Sikorski v. Olin (1977), 174 Mont. 107, 113, 568 P.2d 571, 574. In Sikorski, the plaintiff testified to $10,550 in damages, and the jury awarded $10,000. On appeal, the defendant argued, as the City does here, that the proof of damages was speculative and could not form a basis for the jury's damage award. Sikorski, 568 P.2d at 574. We refused to consider the defendant's argument, stating:

> [w]hile the computations offered may have been subject to the objection that they were speculative in nature, we refuse to consider the matter for the first time on appeal.

Sikorski, 568 P.2d at 574. We face the identical situation here.

7

The City wholly failed to object to the amount of damages presented by Smith and Story. It cannot now claim that Story's proof of damages was speculative and excessive.

The City claims it adequately preserved its objection by raising the issue of speculative damages for lost future profits in its trial brief. We disagree. The City submitted a combined trial brief and motion in limine prior to trial. In the portion entitled "trial brief--evidentiary issues anticipated," the City asserted that Smith's upcoming testimony regarding lost future profits appeared to be speculative. However, the City did not solicit a ruling from the court at any time on the issue of speculative future losses. We conclude, therefore, that including the issue of speculative future losses in its trial brief did not preserve the City's objection regarding Story's "excessive and speculative" proof of damages.

If the City had included the issue of speculative future damages in its motion in limine, and the District Court had ruled on the question, the objection would have been adequately preserved. See Barrett v. ASARCO, Inc. (1990), 245 Mont. 196, 205, 799 P.2d 1078, 1083-84. Of course, that preservation only would have applied to Smith's testimony regarding lost future damages; the City can point to no objection to Smith's testimony regarding loss incurred from forced sale of equipment or Story's testimony regarding the amount due on the contract. Nonetheless, the City did not include this issue in its motion in limine and, therefore, it failed to preserve its objection for appeal.

8

Additionally, the City argues that it preserved its objection for appeal by seeking to exclude Smith's testimony in its motion in limine and by objecting prior to the start of testimony. However, the City made both of these objections on the basis of surprise because it had received Smith's updated report only one week before trial. The District Court, prior to testimony, orally overruled the City's objection, concluding that most of Smith's information and forthcoming testimony was the same as in the first trial. The City did not appeal this ruling.

This Court will consider on appeal only objections made at trial that are timely and specific. Kizer v. Semitool, Inc. (1991), 251 Mont. 199, 207, 824 P.2d 229, 234. A party complaining of error must stand or fall upon the ground relied upon in the trial court; objections that are urged for the first time on appeal will not be considered by this Court. State Dep't of Highways v. DeTienne (1985), 218 Mont. 249, 256, 707 P.2d 534, 538. We conclude that the City's objection to Smith's testimony on the basis of surprise does not preserve its objection to the speculative and excessive nature of the testimony. Therefore, we decline to address the question.

The City's second argument regarding Story's proof of damages is that the $850,000 contract/covenant damages awarded to Story were duplicative. Specifically, the City claims the damages for loss caused by forced sale of equipment duplicate the damages for lost future profits. It also contends that because the first three elements of Story's proof of damages totalled approximately

9

$715,000, and the jury awarded Story $850,000, the jury apparently awarded approximately $135,000 for loss of credit. According to the City, the amount for loss of credit duplicates the amount for lost future profits.

As detailed above, the City did not object to Smith's testimony or reports on the basis that the damages he offered were duplicative. The City also did not object to Story's testimony or exhibits regarding the amount due on the contract, and made only a "relevance" objection to his testimony regarding loss of credit. Nor was the City's argument that the contract damages are duplicative included in its post-trial motions. This argument is a "new theory of the case" advanced on appeal. Therefore, we decline to consider it. Weaver v. Graybill, et al. (1990), 246 Mont. 175, 179, 803 P.2d 1089, 1092-3; Vandalia Ranch v. Farmers Union Oil & Supply (1986), 221 Mont. 253, 259, 718 P.2d 647, 651.

As a final matter, we note that the City made the following appeal to the jury in closing argument:

> And I want you to think particularly about the quality of the expert testimony on damages and Arlen Smith. I'm just going to boldly say that nobody, but nobody could make any real sense out of Arlen Smith's presentation to you. If you want hundreds of thousands of dollars, you better explain it better than that. And if you really understand something, I think it can be explained simply. And our position with Max Simmons [the City's expert] is to simply say that we are not going to try to recompute this flawed system that he has. We will show you that he didn't do it right and you shouldn't rely upon it. And when it comes to proving somebody's damages, remember who has the burden to do that. It's not--we don't have it as the City or Neil Mann. It's not our duty to prove Mark Story's damages. It's his.

This argument, although properly made to a jury, is entirely

10

distinct from the City's argument on appeal and, therefore, in no way preserved its present contention that Story's proof of contract damages was flawed a matter of law. The City's closing argument addresses the jury's province, as a fact-finder, to weigh the credibility and reasonableness of Story's proof of damages. It does not eliminate the City's duty to object to testimony it now contends was improper. See Moore v. Hardy (1988), 230 Mont. 158, 163, 748 P.2d 477, 481.

We hold that the City did not preserve its objections to Story's proof of contract damages.


Did the District Court err in limiting the City's cross-examination of Mark Story?

The City claims it should have been allowed to cross-examine Story regarding his performance on prior jobs. Story contends that the District Court correctly limited the City's cross-examination of Story when its improper motive of impeaching his character became obvious. After a lengthy in-chambers discussion on the relevance of Story's past performances, the District Court ruled that the City could question Story about disputes over final payment on two previous jobs, but it could not question him about problems with his performance that were not relevant to Balboa's cancellation of Story's bond on the Bozeman job.

On issues of relevance, the trial court has wide discretion and will not be reversed except in cases of manifest abuse of that discretion. Martin v. Laurel Cable TV, Inc. (1985), 215 Mont. 229, 232-3, 696 P.2d 454, 456-7. In making its ruling, the District

11

Court carefully considered the relevance and the prejudicial effect of the testimony sought by the City. We cannot conclude that the District Court's evidentiary ruling constituted a manifest abuse of discretion.


Does § 2-9-305(5), MCA (1985), bar Story from recovering against Mann individually?

Throughout this litigation, the City relied on § 2-9-305(5), MCA (1985), in arguing that Mann should be dismissed from the action as an individual defendant or, in the alternative, that Story was precluded from recovering against him. Section 2-9-305(5), MCA (1985), reads:

> Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error or omission or other actionable conduct gave rise to the claim. In any such action against a governmental entity, the employee whose conduct gave rise to this suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in (b) through (d) of subsection (6).

In interpreting § 2-9-305(5), MCA (1985), we must give the language its plain meaning. Stansbury v. Lin (Mont. 1993), 848 P.2d 509, 511, 50 St.Rep. 251, 252. The City argues that because it has always taken the position that Mann's actions in writing the letter to Balboa (the Balboa letter) were within the course and scope of his employment pursuant to the second sentence of § 2-9-305(5), MCA (1985), the District Court should have dismissed Mann

12

as an individual defendant. We disagree.

The first sentence of subsection (5) clearly prohibits an action against a governmental employee based on the same subject matter if recovery has been obtained previously from the governmental entity. Stansbury, 848 P.2d at 511. In Stansbury, the plaintiff settled with the governmental entity and later sued the governmental employee individually. Stansbury, 848 P.2d at 511. We concluded that the settlement constituted a "recovery" from the governmental entity under the statute which barred a later action against the employee. Stansbury, 848 P.2d at 511.

Absent such a recovery from the governmental entity, § 2-9-305(5), MCA (1985), does not bar the filing of an action against the governmental employee. Here, unlike Stansbury, the earliest such "recovery" could be said to exist against the City is at the time of jury verdict. Nothing in § 2-9-305, MCA (1985), provides immunity from suit for Mann under these facts. The question remains, however, whether the statute bars recovery from Mann.

The first sentence of § 2-9-305(5), MCA (1985), provides that recovery against a governmental entity constitutes a complete bar not only to any action but also to any recovery of damages by the claimant, by reason of the same subject matter, against the employee whose actionable conduct gave rise to the claim. Therefore, we examine the pleadings and posture of Story's case to determine whether the recovery against Mann and the recovery against the City arose from the same subject matter.

Story's amended complaint contained five counts. Counts I and

13

II set forth Story's breach of contract and breach of the covenant of good faith and fair dealing claims against the City. Mann's actions in writing the Balboa letter served as a factual basis for both Counts I and II. In Count V, Story set forth his claim for intentional interference with contractual relations against Mann individually. This claim also was based, in part, on the Balboa letter.

Story continued to present this theory of the case throughout the litigation. In Story's opening argument, counsel explicitly referred to the Balboa letter as a basis for both the claim against the City and the claim against Mann. In closing argument, counsel argued Story's claim for breach of the covenant against the City by stating, "was it honest and fair to send the letter to the Balboa Insurance Company?" In explaining the individual claim against Mann, counsel argued:

> This is a case where you've got an opportunity to say to Neil Mann, "we don't appreciate your conduct in sending that letter to Balboa Insurance Company and you should be as liable for that injury as the City of Bozeman is." And by doing that, you will send a message out there to the community. You will tell the community and the people who are government workers here that they have some personal responsibility to be fair and honest, in fact, and they can't hide behind the fact that they work for the government.

Finally, the jury instructions set forth the elements for breach of contract, breach of the covenant of good faith and fair dealing and vicarious liability, allowing the jury to hold the City responsible for Mann's actions.

Based on the above presentation of Story's case, we conclude that the jury likely awarded damages against Mann and the City for

14

the same subject matter--the Balboa letter. Although § 2-9-305(5), MCA, is not a model of clarity, one clear purpose behind the statute is to preclude a claimant from recovering from <u>both</u> the governmental entity and the governmental employee for the same conduct. Story "recovered" from the City for the damages caused by the Balboa letter when the jury rendered its verdict. We conclude the double recovery awarded by the jury is barred by the plain language of § 2-9-305(5), MCA (1985), and on that basis, the separate award of $100,000 against Mann for intentional interference with contractual relations must be stricken from the judgment.

Story asserts that § 2-9-305, MCA (1985), is unconstitutional because it allows the governmental entity to grant an employee immunity from liability merely by acknowledging that the conduct was in the course and scope of the employee's employment. According to Story, this allows a governmental entity to determine unilaterally if a plaintiff can recover punitive damages and interest on the judgment. He characterizes this as an unconstitutional limitation on the right of recovery.

As detailed earlier, we base our decision to strike the damages against Mann on the first sentence of § 2-9-305(5), MCA (1985), not the second sentence which forms the basis for Story's argument. Given the structure of the case as presented by Story, the statute bars double recovery for the same subject matter--the Balboa letter; the City's acknowledgment that Mann acted within the scope of his employment has no effect on this outcome under § 2-9-

15

305(5), MCA (1985). We decline, therefore, to address the effects of the second sentence of § 2-9-305(5), MCA (1985), on a different factual and procedural scenario.

The City also raised other issues on appeal regarding the evidence presented and the instruction given on intentional interference with contractual relations. Because we have determined that § 2-9-305(5), MCA (1985), bars Story from recovering damages against Mann on the record before us, we need not address those issues. For the same reason, we do not reach Story's cross-appeal relating to the running of interest on the award against Mann.

Did the District Court properly instruct the jury?

The City raises four separate but interrelated issues concerning the instructions given by the District Court. It contends that the District Court erred in instructing the jury on reformation of contract, on actual and constructive fraud, on the covenant of good faith and fair dealing, and on liquidated damages.

When examining whether certain jury instructions were properly given or refused, we must consider the jury instructions in their entirety and in connection with other instructions given and the evidence introduced at trial. Feller v. Fox (1989), 237 Mont. 150, 156, 772 P.2d 842, 846. Moreover, refusal of a proposed instruction does not prejudice a party if the subject matter of the instruction is not applicable to the facts or not supported by the evidence introduced at trial. Webcor Electronics v. Home Electronics (1988), 231 Mont. 377, 381, 754 P.2d 491, 493. Keeping

16

these principles in mind, we set forth each argument in greater detail and examine each in turn.

REFORMATION OF CONTRACT

The City argues that the District Court erred both in refusing its offered instruction on reformation of contract, and in giving the instruction offered by Story on that subject. The City's proposed instruction was a recitation of § 28-2-1611, MCA, Montana's reformation statute, which permits reformation for fraud, mutual mistake, or mistake of one party known or suspected by the other party (unilateral mistake). Story contends that the instruction was properly refused because the City did not present sufficient evidence to submit "reformation based on fraud or unilateral mistake" to the jury.

Section 28-2-1611, MCA, specifies unilateral mistake as the "mistake of one party while the other at the time knew or suspected." In interpreting § 17-901, R.C.M. (1947), (the identical predecessor to § 28-2-1611, MCA), we stated that the right to reform a contract for unilateral mistake does not lie for the party who knew of the mistake in the contract; rather, it belongs to the aggrieved party who is laboring under a mistake known or suspected by the other party. Schillinger v. Huber (1958), 133 Mont. 80, 85, 320 P.2d 346, 348. We apply those principles to the City's evidence.

The City asserts that the following facts support its claim for unilateral mistake:

•Story signed the contract knowing it contained the typographical error;

17

•Story knew the City had identified the documents as being in error; and
•Story signed anyway and claimed there was no mistake.

Throughout the litigation, the City has consistently asserted that "our basis for the reformation claim is the typographical error; Story knew or should have known it was supposed to read CY."

The City's argument regarding unilateral mistake is flawed. The City knew of the typographical error when it executed the contract. Doug Daniels testified that he discovered the mistake on October 9; the City executed the contract on November 12, knowing it read "CF" instead of "CY." As such, the City cannot claim that it was laboring under a mistake that the contract read "CY." Pursuant to Schillinger, the party who knows of the mistake cannot seek to reform the contract based on unilateral mistake. Because the law of unilateral mistake does not apply to the City's evidence, we conclude that the City was not entitled to an instruction for reformation based on unilateral mistake. See Webcor, 754 P.2d at 493.

The City's proposed instruction also allowed for reformation based on fraud. The City maintains on appeal that "fraud by Story was a primary theory of the City's case;" yet it does not cite any authority regarding fraud or even describe which representation of Story's constitutes the basis for this theory. As best we can glean from the City's arguments, it asserts that Story's alleged statement to Doug Daniels that "he intended to bid cubic yards" forms the basis for its claim of fraud.

In this regard, we note that on appeal, the City asserts that

18

"Story fraudulently stated that it [the typographical error] would not be a problem." We find no evidence of record to support this assertion. Story's testimony does not support it. Doug Daniels testified in this trial, the first trial, and his deposition only that Story told him that "he intended to bid cubic yards." Furthermore, Daniels testified that it was his own impression from the phone call that it would not be necessary to change the contract and that the typographical error had been resolved; he did not testify that Story stated that the error would not be a problem. Therefore, taking the City's evidence as true for purposes of our analysis, the only basis for its fraud claim is Story's representation that he "intended to bid cubic yards."

A district court need not instruct on fraud unless a question of fact is raised on each of the nine elements. First Bank (N.A.)-Billings v. Clark (1989), 236 Mont. 195, 201, 771 P.2d 84, 88. The nine elements of fraud are:

1. A representation;
2. Falsity of the representation;
3. Materiality of the representation;
4. The speaker's knowledge of the falsity of the representation or ignorance of its truth;
5. The speaker's intent that it be relied upon;
6. The hearer's ignorance of the falsity of the representation;
7. The hearer's reliance on the representation;
8. The hearer's right to rely on the representation; and
9. Consequent and proximate injury caused by the reliance on the representation.

Wiberg v. 17 Bar, Inc. (1990), 241 Mont. 490, 496, 788 P.2d 292, 295. Here, the City failed to establish a prima facie case of fraud; at very least, evidence regarding elements 4, 5, 7, and 8 is completely lacking in the record. As such, we conclude that the

19

City was not entitled to an instruction for reformation based on fraud.

Based on our determinations that the City did not present sufficient evidence to warrant an instruction on reformation based on either unilateral mistake or fraud, we conclude that the District Court did not err in refusing the City's proposed instruction.

The City also argues that the District Court erred in giving Story's proposed instruction for reformation of contract based on mutual mistake. That instruction read:

A contract may be reformed where the party seeking reformation has established by clear, convincing and satisfactory proof that:

1. There was a prior understanding of the parties;

2. The parties executed a written contract;

3. Somewhere and sometime between the understanding reached and the actual creation of the written instrument, a mistake occurs in reducing to writing the agreement both parties intended;

4. The mistake relates to something contemplated by the parties;

5. The mistake is mutual; and

6. The correction sought is that the executed instrument does not reflect the actual and true understanding of the parties.

If you find all the above factors and you find that the Defendant did not acquiesce in the price, you may reform the contract to express the true understanding of the parties.

The City's main contention regarding this instruction is that it did not allow reformation for unilateral mistake or fraud. We have determined that the City was not entitled to an instruction

20

for reformation based on unilateral mistake or fraud. Mutual mistake is the remaining statutory basis for reformation and the instruction correctly identifies the factors required to reform a contract based on mutual mistake. See McSweyn v. Musselshell County (1981), 193 Mont. 525, 531, 632 P.2d 1095, 1098.

The City additionally argues that the instruction given required a higher burden of proof than is required by our cases. It claims that the proper standard of proof is a preponderance of the evidence, citing Reilly v. Maw (1965), 146 Mont. 145, 405 P.2d 440. We disagree. Reilly concerned an actual fraud claim for damages, and the standard for overcoming the presumption that someone acted in good faith is a preponderance of the evidence. Reilly, 405 P.2d at 445. However, a party urging reformation of a contract must overcome a stronger presumption that the writing contains the final agreement of the parties and expresses their real purpose and intent. Voyta v. Clonts (1958), 134 Mont. 156, 166-7, 328 P.2d 655, 661; McSweyn, 632 P.2d at 1099. The correct standard for reformation is clear, convincing, and satisfactory proof. McSweyn, 632 P.2d at 1099.

In sum, we conclude that the District Court properly refused the City's proposed instruction because it had not presented sufficient evidence to support its theories of unilateral mistake and fraud as a basis for reformation of contract. Additionally, the instruction given by the District Court on reformation correctly stated Montana law and, thus, was properly given.

ACTUAL AND CONSTRUCTIVE FRAUD

21

The City also argues that the District Court erred in refusing its proposed instruction Nos. 15, 26, 27 and 28, which concerned the City's claims of actual and constructive fraud. The District Court directed a verdict for Story on the City's fraud claims at the close of testimony. It did not instruct the jury regarding these claims.

If the party claiming actual fraud does not present a prima facie case on the nine elements of fraud, a directed verdict is proper. McGregor v. Cushman/Mommer (1986), 220 Mont. 98, 104, 714 P.2d 536, 540. We concluded above that the City did not present a prima facie case of fraud. Therefore, the District Court did not err in directing a verdict against the City on actual fraud.

The City also disputes the District Court's refusal of its instruction on constructive fraud, which was a recitation of § 28-2-406, MCA:

Constructive fraud consists in:

(1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

The City has failed to prove or even assert the existence of any breach of a duty gaining an advantage to Story or any act or omission declared fraudulent by law, as required by § 29-2-406, MCA. The City failed to establish a prima facie case of constructive fraud and, therefore, was not entitled to an

22

instruction on that subject. See Wiberg, 788 P.2d at 295.

We hold that the District Court did not err in refusing the City's proposed instruction Nos. 15, 26, 27 and 28 on actual and constructive fraud.

MUTUAL BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

In answering Story's amended complaint, the City counterclaimed for breach of contract and breach of the covenant of good faith and fair dealing against Story. It based this counterclaim on its assertion that Story used fraud and deceit to capitalize on the typographical error. The City argues that the District Court erred in refusing its proposed instruction on the mutual breach of the duty of good faith and fair dealing, which stated:

> If both parties have breached the implied covenant of good faith and fair dealing, neither can recover on it.

The City cites the case of Los Angeles Coliseum Comm'n v. N.F.L. (9th Cir. 1986), 791 F.2d 1356, in support of its instruction.

In Barrett v. ASARCO, Inc. (1988), 234 Mont. 229, 238, 763 P.2d 27, 33, we relied on the Ninth Circuit Court of Appeals' decision in Los Angeles Coliseum in determining that the covenant of good faith and fair dealing was a "two-way" street. Barrett, 763 P.2d at 32. We stated that, in the employment context, an employee who breaches his or her duty of good faith and fair dealing may not then complain of unfair dealing by the employer. However, we quoted the Ninth Circuit's caveat in Los Angeles Coliseum that this rule has a narrow application, and stated:

> We emphasize that our ruling does not embrace a broad

23

> rule whereby any two breaches of the implied good faith promise by opposing contracting parties constitute "offsetting penalties" which cancel each other out; _our ruling applies only to factual contexts such as the present one, where both breaches concerned the same issue and occurred during one episode of the contractual relationship_.

Barrett, 763 P.2d at 33 (emphasis added). Neither Los Angeles Coliseum nor Barrett supports the broad statement of law offered by the City in its proposed instruction.

We conclude, therefore, that the District Court did not err in refusing the City's proposed instruction on mutual breach of the covenant of good faith and fair dealing.

LIQUIDATED DAMAGES

The City asserts that the District Court erred in refusing to instruct the jury on its claim of liquidated damages. James Wysocki, Bozeman City Manager, testified that the contract between Story and the City contained a $450 per day liquidated damages clause. He further testified that, because the job was finished 87 days later than provided in the contract, the City assessed $39,150 against Story pursuant to the clause. At the close of evidence, the District Court granted Story's motion for a directed verdict on liquidated damages and refused to instruct the jury on the issue.

The City correctly asserts that, in Morgen & Osgood Constr. Co. v. Big Sky of Montana (1976), 171 Mont. 268, 557 P.2d 1017, this Court upheld a liquidated damages clause in a construction contract. It then asks us to reject the burden set forth in Morgen for a party seeking to recover under such a clause--implicitly conceding that it did not meet that burden--in favor of a different

24

standard from a landlord-tenant case.  We decline to do so.

In Montana, liquidated damages clauses in contracts are generally prima facie void.  Section 27-2-721(1), MCA; Morgen, 557 P.2d at 1019; Weber v. Rivera (Mont. 1992), 841 P.2d 534, 537, 49 St.Rep. 969, 971.  We have previously explained that to come within the statutory exception to this rule, facts must be alleged and proved that the damages would be extremely difficult or impracticable to ascertain and that the damages assessed are a reasonable estimate of the probable damages or are reasonably proportionate to the actual damages sustained at the time of the breach.  Morgen, 557 P.2d at 1020-1; Weber, 841 P.2d at 537.  The party seeking to enforce the liquidated damages clause carries the burden of proving these factors.  Morgen, 557 P.2d at 1020.

Wysocki was the only witness who testified for the City regarding the liquidated damages clause.  He did not testify that damages would be difficult to ascertain or that the $450 per day penalty was a reasonable estimate of the damages actually suffered by the City.  We conclude, therefore, that the City did not meet its burden under Morgen and the District Court correctly refused to instruct the jury on liquidated damages.


Did the special verdict form comply with Rule 49(a), M.R.Civ.P.?

The special verdict form, as completed by the jury, read as follows:

1.  Did the City of Bozeman breach the contract with Mark Story and/or breach the covenant of good faith and fair dealing.

25

Yes _X_ No ___

2. If yes, what are Mark Story's damages against the City of Bozeman. $_850,000_

3. Did Neil Mann interfere with Mark Story's contractual relations with Balboa Insurance Company.
Yes _X_ No ___

4. If yes, what are Mark Story's damages against Neil Mann. $_100,000_

5. Did Mark Story breach the contract with the City of Bozeman and/or breach the covenant of good faith and fair dealing.

Yes _X_ No ___

6. If yes, what are the City of Bozeman's damages. $_8,035.63_

This Court uses a three-part standard to determine the adequacy of a special verdict form under Rule 49(a), M.R.Civ.P.:

> 1) whether, when read as a whole and in conjunction with the general charge, the interrogatories adequately presented the contested issues to the jury;
> 2) whether the submission of the issues to the jury was fair; and
> 3) whether the ultimate questions of fact were clearly submitted to the jury.

Kinjerski v. Lamey (1981), 194 Mont. 38, 41, 635 P.2d 566, 568.

The City contends that the District Court violated Rule 49(a), M.R.Civ.P., because the special verdict form did not include the issues of fraud and unilateral mistake, the City's primary theories for reformation of the contract. We have determined that the City did not present sufficient evidence to warrant an instruction on unilateral mistake or fraud. If the evidence does not support a claim, the district court should not allow a jury to consider the claim on a special verdict form. R.H. Grover, Inc. v. Flynn Ins. Co. (1989), 238 Mont. 278, 284, 777 P.2d 338, 341.

26

Applying the <u>Kinjerski</u> test, we conclude that the special verdict form, when combined with the jury instructions, adequately presented the contested issues to the jury. The jury was able to consider the City's reformation argument under Instruction No. 14, which stated:

> The Defendants assert that the Plaintiff should not be compensated under Schedule II, Item No. 1, Type 2 Pipe Bedding in Place at $25 per cubic foot because the contract should be reformed.

Further, Instruction No. 15, which was set forth in our discussion of the preceding issue, explicitly provided for reformation based on mutual mistake. The jury had the opportunity to consider the City's theory that both parties intended to bid "CY" and could have adjusted the damages awarded accordingly. Lastly, the ultimate question of whether either party had breached the contract or the covenant of good faith and fair dealing was presented to the jury.

We hold that the special verdict form did not violate Rule 49(a), M.R.Civ.P.

Did the District Court err in permitting retrial of the issues of reformation, defamation and constructive fraud?

Prior to trial, the City moved for summary judgment on its claims of reformation and contract damages, claiming that those issues were determined conclusively in the first trial. It also moved for summary judgment on Story's claims of constructive fraud by the City and defamation. The District Court denied the City's motion. The court allowed Story to present evidence on his claims of defamation and constructive fraud against the City, which the

27

City now claims unduly prejudiced the jury. The City asserts that because this Court's opinion in Story I does not address the issues of constructive fraud, defamation and reformation, the District Court erred in permitting Story to retry them. We disagree.

In Story I we stated:

> The City of Bozeman appeals a jury verdict against it .
> . . . We reverse and remand for retrial . . . . Story has
> raised several issues on cross-appeal, none of which we
> need discuss because of our grant of a new trial.

Story, 791 P.2d at 769, 776-7.

When a new trial is granted, the parties are returned to the position they occupied before the trial. O'Brien v. Great Northern R.R. Co. (1966), 148 Mont. 429, 441, 421 P.2d 710, 716. A judgment of the supreme court ordering a new trial opens anew all questions in the case. Mattock v. Goughner (1893), 13 Mont. 300, 301, 34 P. 36, 36. In Zavarelli v. Might (1989), 239 Mont. 120, 125-6, 779 P.2d 489, 493, we remanded for further proceedings, and explained:

> On remand, the trial court may consider or decide any
> matters left open by the appellate court, and is free to
> make any order or direction in further progress of the
> case, not inconsistent with the decision of the appellate
> court, as to any question not presented or settled by
> such decision. The issues are generally open on a
> retrial when a case is reversed and remanded for further
> proceedings. If the mandate speaks only in the light of
> the special facts found, the trial court is at liberty to
> proceed in all other respects in the matter, that,
> according to its judgment, justice may require.

Although in Zavarelli we did not specifically remand for a new trial, as we did in Story I, the rationale expressed is equally applicable to the case before us. In Story I, we remanded for a new trial; we did not "save" certain correct portions of the judgment or remand with limiting instructions. The City appealed

28

from the district court judgment in Story I; its current argument is particularly incongruous in light of the City's broad closing request in its appellate brief in Story I that the judgment entered against the City be set aside and a new trial ordered.

We conclude that the District Court did not err in permitting retrial of the issues of constructive fraud, defamation and reformation.

Affirmed in part, reversed in part, and remanded for entry of a modified judgment striking the $100,000 award against Neil Mann.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

June 24, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


J. Robert Planalp
Landoe, Brown, Planalp & Braaksma
P.O. Box ONE
Bozeman, MT 59771-0001

Gregory O. Morgan
Attorney at Law
P.O. Box 1530
Bozeman, MT 59771-1530


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
  Deputy